[No. 4382.  Decided December 23, 1902.]

J. C. Foster, *Respondent,* v. Pacific Clipper Line, *Appellant.*

EVIDENCE — ADMISSIBILITY OF UNSTAMPED INSTRUMENT.

The absence of an internal revenue stamp would not affect the admissibility of the instrument as evidence in an action in a state court.

WHARFINGERS — COLLAPSE OF WHARF — PRESUMPTION OF NEGLIGENCE.

Where no external violence is shown as the cause of the collapse of a dock and warehouse, a presumption of negligence on the part of the warehouseman is raised.

SAME — INSTRUCTIONS — BURDEN OF PROOF.

An instruction to the effect that, if the facts raised a presumption of negligence on the part of defendant, who had set up an affirmative defense of the exercise of due care, then the burden of removing the presumption was on defendant, and the jury should find for plaintiff, if the evidence should be evenly balanced, was correct.

INSTRUCTIONS — REFUSAL OF REQUESTS.

The refusal of requested instructions is not error when the same ground has been covered by the court in other instructions.

Appeal from Superior Court, King County.—Hon. George Meade Emory, Judge.  Affirmed.

*Charles F. Munday,* for appellant.

*William Parmerlee* and *J. L. Corrigan,* for respondent.

The opinion of the court was delivered by

Reavis, C. J.—The complaint, in substance, alleges that the defendant was a common carrier of goods for hire between Seattle and San Francisco; that, about November, 1899, plaintiff delivered to defendant, for transportation by boat from Seattle to San Francisco, 1,872 sacks of oats, the plaintiff then having special interest in said oats by vir-

tue of a chattel mortgage owned by him, amounting to the full value of the oats; that the defendant undertook to safely transport said goods.    The allegation of loss is as follows:

"That the defendant did not safely carry or deliver said goods, or any part thereof, but, on the contrary, the defendant negligently failed to carry said goods, or any part thereof, and negligently lost all thereof, except an amount of the reasonable value of twenty-five dollars ($25.00) which amount the defendant converted to its own use; all to the damage of the plaintiff in the sum of two thousand and forty and 94.100 dollars ($2,040.94)."

The answer admits the receipt of the oats and their loss, and that all the charges on account of said oats had been paid.    It denies that the oats were lost through any fault or neglect of defendant, and as an affirmative defense states:

"That at Seattle, Washington, at the times mentioned in said third amended complaint, and at the dates mentioned in the foregoing portions of this answer, the defendant was carrying on in the city of Seattle the business of a forwarder, warehouseman, and wharfinger; that on said dates specified in the foregoing portions of this answer there was delivered to the defendant, in its capacity as a forwarder, warehouseman, and wharfinger, eighteen hundred and seventy-two sacks (1,872) of oats (being the same oats referred to in the third amended complaint herein), to be stored by the defendant in its warehouse, and to be forwarded by said defendant to San Francisco, California, according to directions given at the time of the delivery of said oats to the defendant; that said oats were thereupon stored by the defendant in its warehouse on its wharf or dock, commonly known as the 'Arlington dock,' in the city of Seattle, to await the arrival of the steamer upon which said oats were to be forwarded according to the directions given as aforesaid; that said oats remained in the possession of said defendant in its said capacity of forwarder,

warehouseman, and wharfinger, and in its said warehouse, until the 8th day of December, 1899, when, through no fault or negligence on the part of the defendant, but by accident or casualty, which could not, by reasonable prudence or care, be provided against, said wharf upon which and said warehouse in which said oats were stored broke through, and precipitated said oats into the waters of Elliott's Bay, underneath said warehouse and dock, whereby said oats became and were lost, so that defendant became, and still is, unable to deliver the same; that said defendant at all times, in the handling of said oats and in the storing of the same in the warehouse on said dock, and in all things and at all times while said oats were in its custody and possession, exercised all proper care and caution, and was not in any respect guilty of any negligence or want of care; that the building in which and the dock upon which said oats were stored were at all times reasonably fit and safe for such storage, and the defect therein, if any there was, which caused the falling in thereof, was one which the defendant did not know of, and could not have discovered by the use of ordinary care."

The first error assigned is on the admission of the chattel mortgage in evidence, because it did not have an internal revenue stamp thereon.     It may be observed that such stamps are not material in the procedure in the state courts.     *Dawson v. McCarty,* 21 Wash. 314 (57 Pac. 816, 75 Am. St. Rep. 841).

The second and third errors are assigned upon the instructions.     It appears from the record that no point was made by defendant on the allegation in the complaint charging defendant as a common carrier.     The material instructions given were as follows:

"I instruct you, gentlemen of the jury, that the issues that you have for your consideration in this case, summarized, are whether or not the defendant, in its capacity as wharfinger, warehouseman, and forwarder, is liable for negligence as for the loss of the plaintiff's oats.     The ques-

tion whether or not the defendant company is a carrier of goods, as alleged in the complaint, is not before you for your consideration in this case, on account of the manner in which the proof has gone before you.   .   .   .

"I instruct you that a warehouseman is one who receives into a warehouse, for storage, goods, in consideration of hire or money paid for that service."

The court correctly defined "ordinary care" and "negligence." In substance, the jury were instructed that if they believed from a preponderance of the evidence that the dock in question collapsed, and that the collapse occurred, considering the plaintiff's case alone, not by reason of any extraordinary violence, or not by reason of any cause outside the dock itself, negligence of the defendant was presumed; and, continuing further, the court said:

"I instruct you, however, gentlemen of the jury, that a presumption of that kind is not conclusive at all, but that if you should consider the plaintiff's case with reference to the last instruction that I have given you, and should come to the conclusion that negligence had been shown by a presumption of that kind, then it would be your duty to consider the defense alleged on the part of the defendant, with reference to the use of due care; and the law at that stage would then cast upon the defendant the burden of proving by a fair preponderance of the evidence that the collapse of the dock had occurred in spite of the use of due and ordinary care on the part of the defendant, or that the collapse had occurred by reason of some agency or cause for which the defendant was not to blame at the time. . .

"I instruct you that negligence will not be presumed from the mere fact of the loss of the oats, but the fact of negligence must be shown by plaintiff, by a fair preponderance of the evidence, under the rules and in accordance with the instructions that I have heretofore given you."

The court then gave the first instruction complained of here as follows:

"I have already instructed you that the burden of proof

is upon the plaintiff to establish the allegations of the complaint, that is, the negligence and the loss. If in the consideration of the evidence that has been introduced upon such an issue as that, should you find the evidence to be evenly balanced, it would be your duty to resolve that point in favor of the defendant. So, too, where the burden of proof should be upon the defendant, as relating to the affirmative defense that he alleges, should you find that all the evidence was evenly balanced in favor of the plaintiff and the defendant upon any such issue, where the burden lay upon the defendant, it would be your duty to resolve such issue in favor of the plaintiff."

It seems clear the court meant, by the reference to when the burden should shift to the defendant, that, if the facts in the plaintiff's evidence raising the presumption as defined were found, then the burden of removing such presumption was on the defendant. The accident which occasioned the loss of the oats was the collapse of its wharf in Seattle. There had been evidence given on behalf of the plaintiff tending to show some defects in the wharf existing prior to the accident. The style of the construction of the wharf upon piles was shown, and the evidence tended to show that it was not sufficient to maintain the weight imposed upon it. A considerable portion of the wharf, stated as forty feet square, or more, had fallen. It seems, there was sufficient evidence on the part of the plaintiff for the jury to infer that the dock was insufficient in strength to support the weight imposed upon it when the oats were placed there. If this be true, the instruction relative to the presumption of negligence, and the burden upon the defendant to meet it, taken together with the other instructions, stated the law fairly. It would seem that the nature of the accident may raise the presumption of negligence under some circumstances. See *Holt Ice, etc., Co.*

*v. Arthur Jordan Co.,* 25 Ind. App. 314 (57 N. E. 575);
*Davis v. Tribune Job Printing Co.,* 70 Minn. 95 (72 N.
W. 808); *Russell Mfg. Co. v. New Haven Steamboat Co.,*
50 N. Y. 121.

In *Kaiser v. Latimer,* 57 N. Y. Supp. 833, the principle
of the case is very well asserted in the syllabus that "The
negligence of a warehouseman will be presumed where the
goods were destroyed by the collapse, from no external vio-
lence, of the building in which he stored them."

The second error claimed was the refusal of the court
to. instruct at the request of defendant that, if the jury
were unable to determine from the evidence what caused
the dock to break through, they must find for the de-
fendant.    In view of the instructions already given, no
error is perceived in the refusal to give this one.

It may be observed of the objection that the court over-
ruled the motion for a new trial on the ground that the
evidence was insufficient to sustain the verdict, that there
was substantial evidence supporting all the essential facts
necessary to maintain the verdict.

Affirmed.

DUNBAR, FULLERTON, ANDERS and MOUNT, JJ., concur.