[No. 24311. Department One. March 24, 1933.]

JOHN J. STEINER, *Respondent,* v. ROYAL BLUE CAB COMPANY, *Appellant.*[1]

*J. Speed Smith* and *Henry Elliott, Jr.,* for appellant.
*Pearson & Potts,* for respondent.

MILLARD, J.—Defendant's taxicab collided with the plaintiff's taxicab. This action was instituted to recover for property damage and personal injuries sustained by the plaintiff in that collision. Defendant's

[1]Reported in 20 P. (2d) 39.

timely challenges to the legal sufficiency of the evidence were denied, and the trial of the cause to a jury resulted in a verdict against the defendant. From the judgment entered on the verdict, motions for judgment notwithstanding the verdict and for a new trial having been overruled, the defendant appealed.

The admitted facts are that, shortly after midnight, June 5, 1931, while properly illuminated and properly parked off the highway adjoining the Interlaken boulevard near Twenty-second avenue north in the city of Seattle, a taxicab, in which respondent was sitting, and of which he was the owner and operator, was struck by a taxicab owned by the appellant, a corporation engaged in the business of operating taxicabs in the city of Seattle. The only issue raised was whether the taxicab doing the damage was in the service of the appellant at the time of the collision. It was appellant's theory that the taxicab was stolen, and that the accident occurred while the thief was driving the vehicle. An additional defense theory is that, if appellant's employee was operating the taxicab at the time of the accident, the employee was not at that time engaged in the business of appellant.

Counsel for appellant insist that, under the rule which we have consistently followed since it was enunciated in *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 135 Pac. 821, 50 L. R. A. (N. S.) 59, the *prima facie* case resulting from appellant's admission of ownership of the taxicab doing the damage was overcome, as a matter of law; that no question of fact was presented for determination of the jury, hence the trial court should have sustained the challenges to the legal sufficiency of the evidence or should have granted the motion for judgment notwithstanding the verdict.

The rule to which our attention is directed is that, when it is proved or admitted that the vehicle

doing the damage belonged to the defendant at the time of the injury, a *prima facie* case is made that the vehicle was then in the possession of the owner, and that the person driving it was an employee of the owner and was operating the vehicle in furtherance of the owner's business. True, the *prima facie* case rests upon a presumption which exists only so long as there is no substantial evidence to the contrary. It should be borne in mind, however, that the burden is imposed upon the defendant to overcome that presumption; and that we are committed to the rule that the question whether the offending vehicle was in the service of the defendant at the time of the accident is for the jury when the testimony against the presumption is that of interested witnesses. *Samuels v. Hiawatha Holstein Dairy Co.*, 115 Wash. 343, 197 Pac. 24; *Barach v. Island Empire Tel. & Tel. Co.*, 151 Wash. 279, 275 Pac. 713.

The only testimony rebutting the presumption was that of employees of the appellant. None of those witnesses was a party to this action. However, they were interested witnesses, inasmuch as they were employees of the appellant. *Barach v. Island Empire Tel. & Tel. Co., supra.* Aught stated in *Babbitt v. Seattle School Dist. No. 1,* 100 Wash. 392, 170 Pac. 1020, inconsistent with this view, is hereby overruled.

Respondent testified that, the night of the accident, his taxicab became disabled while on a trip, and he parked his car as above recited. He walked to Twenty-fourth avenue and Boyer street, hailed a motorist, and requested that he be conveyed to a point where he could telephone his office. That motorist, whose home was a few blocks from the place where respondent halted her, informed the respondent she would telephone his taxicab office to have one of respondent's employees, who came on duty at twelve midnight, come with another taxicab and tow the disabled taxicab to

a garage. Respondent returned to his taxicab and sat in the front seat thereof awaiting the arrival of his employee. He became impatient, looked at his watch and ascertained that the time was then 12:45 a. m., inspected his taxicab to determine whether he could operate it to a garage, then returned to the front seat of the taxicab to await the arrival of his employee.

Within two to five minutes thereafter, a Royal Blue Cab Buick sedan (appellant's taxicab) crashed into the left side of respondent's taxicab. Though dazed, respondent saw someone who had the appearance of a taxicab operator run into the brush; that is, the escaping driver wore a dark blue uniform, puttees and cap, being the same kind of uniform as that worn by appellant's drivers. The driver of appellant's car was of stocky build, about sixty-eight or sixty-nine inches in height. This driver was pointed out in the court room by respondent as resembling the driver who escaped. A few minutes after the collision, respondent's employee and a helper appeared on the scene for the purpose of taking respondent's taxicab to the garage.

Dan Vivolo, appellant's driver, testified as follows: He was the operator of the offending taxicab from four p. m. June 4th, until the time he claimed the car was stolen, June 5th. He was dressed as described by respondent. He received a call about 12:35 or 12:37 a. m. at his stand at the Hampstead Arms apartment house to go to apartment 308 of an apartment house at 1402 east Fir street, which is near Fourteenth street, about two or three blocks north of Yesler way. He arrived at the apartment house about 12:42 or 12:45 a. m., parked his taxicab, in which he left the ignition key, on the east side of east Fir street, and entered the apartment house. He failed to find any apartment of the designated number 308. He then went upstairs to

room 38 of the apartment house and tapped on the door. There was no response. He returned (it was then about 12:52 a. m.) to the place where he had parked his taxicab. The vehicle was gone.

He looked around for a couple of minutes, went to a pay telephone and communicated to appellant's dispatcher the information that the taxicab was stolen, and requested that the police department be so advised. Pursuant to the dispatcher's orders, Vivolo waited at 1402 east Fir street for one of appellant's drivers to call for him and take him to the police station to make report of the theft. About one a. m., the driver arrived and conveyed Vivolo to the police station, where he arrived about 1:05 a. m. He denied that he was on Interlaken boulevard the night of the accident.

Appellant's dispatcher testified that he received the call from Vivolo at the time stated; that he sent a driver to 1402 east Fir street to convey Vivolo to the police station to make the report of the theft; that about two a. m. an employee of respondent telephoned that appellant's taxicab had been found; that he immediately informed the police department to that effect and sent one of appellant's drivers to Twenty-second and Boyer streets to tow in the damaged vehicle. Another of appellant's employees testified in corroboration of the foregoing. Another employee of appellant testified that he went to 1402 east Fir street, as directed, and conveyed Vivolo to the police station.

A clerk in the police department testified that report was received at the time stated, respecting the theft of the taxicab. Two policemen testified that they were instructed, between two and three o'clock in the morning, to go to Interlaken boulevard and Twenty-second avenue to get a stolen car; that they picked up the taxicab at that point, which is two and one-half to three miles from 1402 east Fir street.

From respondent's rebuttal testimony, it would appear that Twenty-fourth avenue north and Boyer street are arterial highways, three blocks distant from the scene of the accident; that it would not require more than seven minutes by automobile to go from the scene of the accident to the point at which the theft was alleged to have occurred; that is, Vivolo would have had sufficient time, if he was operating the taxicab at the time of the collision, to have escaped, hailed a passing automobile on one of the arterial highways and obtained transportation to a point at or near 1402 east Fir street, from where he claimed he telephoned appellant's office and the point at which he was picked up by another driver of appellant and taken to the police station to make report of the theft of the taxicab.

There is no corroboration of Vivolo's testimony that he phoned from 1402 east Fir street. There is no testimony, other than his, as to the point from which he telephoned. If, as respondent insists and as it will be presumed in the absence of evidence to the contrary, in view of appellant's admitted ownership of the taxicab, Vivolo was operating the taxicab at the time of the collision, that driver had sufficient time in which to make a record of theft of his car, which would relieve him of blame for the collision. Unless exculpated from the charge of negligence which would follow discovery of the fact that he was operating the car at the time of the accident, Vivolo knew—he so testified—that he would be discharged by his employer. Whether Vivolo told the truth was a question for the jury.

The jury was not required to believe that the taxicab of appellant was stolen and, at the time of the collision, was being operated by the thief. The jury was not required to believe that the driver was using the taxicab for his own personal pleasure and that, after the

collision, he contrived to get to the east Fir street apartments in time to make his exculpatory record. It may have been, as respondent suggests, that appellant's taxicab, which was not restricted to scheduled routes, may have picked up a passenger while on its way to the apartments at 1402 east Fir street, and while on that trip the collision occurred. That suggestion, however, may be disregarded.

Appellant's admission of ownership of the taxicab made a *prima facie* case that the taxicab, at the time of the collision, was in the possession of the appellant, and that the person driving the taxicab was an employee of the appellant and was operating the taxicab in furtherance of the appellant's business. The *prima facie* case rested upon a presumption which existed until there was substantial evidence to the contrary. Upon the appellant was imposed the burden of overcoming that presumption. The only testimony against the presumption was that of interested witnesses, hence the question whether the taxicab was engaged in the business of the appellant at the time of the collision was for the jury. That question was foreclosed by the verdict of the jury.

Counsel for appellant contend that the trial court erred in instructing the jury that a presumption of operation by the owner arises when the ownership of an automobile in a collision is admitted or proven, and that the burden is then cast upon the defendant to overcome such presumption by a fair preponderance of all the evidence, either that the driver of the automobile was not the agent or employee of the defendant, or that the automobile at the time was not being driven upon the business of, or for the benefit of, such owner.

Any question as to the correctness of the foregoing instruction is foreclosed by *Samuels v. Hiawatha Hol-*

*stein Dairy Co.,* 115 Wash. 343, 197 Pac. 24. In that case, the court charged the jury—the instruction differs not in principle from the instruction in the case at bar —that, if it found that the vehicle doing the damage belonged to the defendant at the time of the injury, that fact established, *prima facie,* that the vehicle was then in the possession of the owner and being operated for such owner; that, "whenever such presumption exists by reason of such ownership," the burden is then cast upon the defendant owner to overcome such presumption by competent evidence, and that it was the duty of the jury to determine the question whether the driver was engaged in the business of the defendant, from all the evidence and circumstances shown by the evidence. We held that the instruction in the case cited stated the law as laid down in *Birch v. Abercrombie, supra,* and several later cases.

The court, by its instruction, did no more than give effect to the rule that,

"When the ownership of the automobile was proven or admitted a *prima facie* case had been made, unless overcome by testimony to the contrary, upon which plaintiff was entitled to recover." *Griffin v. Smith,* 132 Wash. 624, 232 Pac. 929.

A *prima facie* case of negligence against a railroad company would be established by evidence that a window with a broken, weak or defective catch fell upon the arm of a passenger, and that the railroad company had made no effort to discover or repair the defect. A *prima facie* case having been made out by the aid of the legal presumption of negligence—the same principle in the case at bar—the railroad company would have the burden of establishing the existence of facts necessary to explain the cause of the accident and to demonstrate the use of proper care in the maintenance of its cars and appliances in a condition of safety. An

instruction that the happening of an injury to a passenger because of defective appliances creates a *prima facie* case of failure in the performance of duty on the part of the carrier, and that

"The company has the burden of proving, in order to rebut the presumption of negligence, under the circumstances, that the accident could not have been avoided by the exercise of the highest degree of practical care and diligence,"

would be correct. *Cleveland C. C. & St. L. R. R. Co. v. Hadley,* 170 Ind. 204, 82 N. E. 1025, 84 N. E. 13, 16 L. R. A. (N. S.) 527.

To the same effect is *Foster v. Pacific Clipper Line,* 30 Wash. 515, 71 Pac. 48, in which we held that an instruction to the effect that, if the facts raised a presumption of negligence on the part of defendant, who had set up an affirmative defense of the exercise of due care, then the burden of removing the presumption was on defendant, and the jury should find for plaintiff, if the evidence should be evenly balanced.

The judgment should be, and it is, affirmed.

BEALS, C. J., PARKER, and MITCHELL, JJ., concur.

HOLCOMB, J., concurs in the result.