Hervey **JONES**, Plaintiff,

v.

**FARM BUREAU MUTUAL AUTOMO-BILE INSURANCE COMPANY,**
Defendant.

**Civ. No. 837.**

United States District Court
E. D. North Carolina,
Raleigh Division.

Jan. 27, 1958.

Doffermyre & Stewart, Salmon & Hooper, Dunn, N. C., for plaintiff.

Smith, Leach, Anderson & Dorsett, Raleigh, N. C., for defendant.

GILLIAM, District Judge.

This action was brought to recover the sum of $6,000, the amount of the judgment obtained in the Superior Court of North Carolina against Johnny B. Bryant. Counsel agreed at the hearing and in their briefs that the sole ultimate question, upon which liability turns, is whether Johnny B. Bryant at the time plaintiff was injured was driving the insured truck of S. S. McLamb with his permission, so as to constitute Bryant an additional insured. If so, the plaintiff should have judgment; otherwise, defendant.

It is agreed by the parties, also, that the plaintiff is required to prove the affirmative of the query by the preponderance of the evidence. Plaintiff asserts it to be a well settled rule of law that use of an automobile by one other than the owner raises the presumption that the vehicle is being used with the owner's consent and cites State Farm Mutual Automobile Insurance Co. v. Hugee, D.C., 32 F.Supp. 665, and Steiner v. Royal Blue Cab Co., 172 Wash. 396, 20 P.2d 39. These cases do not support the contention that such a rule applies in this case, and my opinion is that no such presumption is raised by the mere proof that Johnny B. Bryant was the driver.

On the day of the accident which resulted in the injuries for which Johnny B. Bryant recovered judgment, and several hours before the accident, Bryant, S. S. McLamb, the owner of the truck, and Irving Long, were proceeding southwardly from Clarkton to Whiteville. Long was driving. They were stopped by Patrolman McLean and Long was arrested for driving drunk, McLamb for public drunkenness. No charge was preferred against Bryant. Later reference in detail will be made to what happened next, but it is not disputed that Bryant drove the McLamb truck from the scene when the patrolman took McLamb and Long in custody and then carried them to Whiteville, about 35 miles away, for detention in Columbus County Jail, pending the posting of bonds for their later

appearances for trial. Later, at about 10:30 p. m., while Bryant was still driving the truck, it overturned on the old Godwin road, about 3 miles from Dunn, and plaintiff was injured. At Whiteville the patrolman obtained warrants and McLamb and Long were placed in jail; bond of $50 was fixed for McLamb and bond of $300 for Long. At the jail the prisoners contacted some of their relatives at Erwin and later in the night Long's father and others came to the jail and posted bonds for their release.

It is important now to go back to the scene of the arrest and determine just what happened with respect to the custody of the truck. There is hopeless conflict between the statements of McLamb and Long, as witnesses for the defendant, and the statement of Bryant for the plaintiff, but from the testimony of Patrolman McLean, who made the arrest, Patrolman Hoffler, who was at the jail while McLamb and Long were being booked and during the arrangements for bonds, and Donald Hunt, the jailer, I find these facts:

■ After the arrests, when McLean stated that he would make arrangements to have a wrecker tow the truck into Whiteville, to which point he proposed to carry McLamb and Long, McLamb requested him to permit Bryant to drive the truck to Whiteville so as to avoid the towing expense; McLean agreed and Bryant, with McLamb's consent, took possession of the truck, stating he would drive it to Whiteville; at that time McLamb told Bryant "to follow us (McLean, McLamb and Long) in to Whiteville to the county jail"; thereupon, McLean placed the prisoners in his car and drove them to the jail; for about 6 miles McLean observed Bryant following him, but he then speeded up and did not see Bryant again; Bryant came to the jail about 10 minutes after McLamb and Long were locked up and asked to see them; he was advised by the jailer that he could not, as it was not within visiting hours, but he was advised that "they (McLamb and Long) call-

ed their people and they were coming down after them to post bond"; whereupon, Bryant said he would go out and wait for them; a short time later McLamb asked the jailer "if that boy had brought his truck in" and told him "to go out and get the keys"; the jailer looked for Bryant around the jail but did not see him or the truck again. According to Bryant's testimony, after he had the conversation with the jailer, he drove the truck away toward Clinton and went in to Harnett County searching for a bondsman, as he was requested by McLamb to do just before the patrolman stopped the truck and arrested McLamb and Long. McLamb denied making any such request and also denied asking Bryant to take the truck into Whiteville, as stated by Patrolman McLean, who was corroborated by Patrolman Hoffler. Whatever doubt may exist in other respects, I am completely convinced and find as a fact that Bryant initially had the express permission of McLamb to drive the truck, but the weight of the evidence establishes and I find as a fact that this permission to drive it was expressly limited to driving it to the jail at Whiteville. There is no need to review all the evidence for the evidence of McLean and Hoffler is specific and their version is supported by the fact that at the jail McLamb told the jailer to get the keys. Accepting this as the truth of what happened, as I do, when the truck was parked at the jail, as undoubtedly it was, the permission given to drive it terminated and thereafter Bryant was not an additional insured under the policy and plaintiff should not recover. It may be that Bryant's excursion into Harnett County was for the purpose of locating a bondsman for his friends, although much of the reliable evidence points to the conclusion that Bryant was riding over the country for his own pleasure and not in the interest of McLamb at all. But, whatever may be fact, Bryant's permission to drive was limited expressly to the trip from the scene of the arrest to the jail at Whiteville, a distance of 35 miles; thereafter

the driving was without the insured's permission. It cannot be said that the driving after the trip to the jail, if in behalf of McLamb, was with his implied permission. In Hooper v. Casualty Co., 233 N.C. 154, 158, 63 S.E.2d 128, 131, the Court said: "But whether the permission be expressly granted or impliedly conferred, it must originate in the language or the conduct of the named insured or of someone having authority to bind him in that respect." Inasmuch as the permission of McLamb and the direction of McLean were quite specific and limited to taking the truck in to the jail in Whiteville, it could not be said that implied permission to drive it thereafter away from the jail and into another county originated in their language or conduct.

 While there seems to be some conflict among the many cases on the effect of slight or unsubstantial deviation from instructions given to one who is permitted to drive another's vehicle and experiences trouble during such deviation there are numerous decisions holding that "permission to do a specific thing is not permission to do all things". Continental Casualty Co. v. Padgett, 4 Cir., 219 F.2d 133, 136. " 'Some courts take the view * * * that express permission for a given purpose implies permission for all purposes' ", but in North Carolina and in this Circuit such rule does not prevail. Continental Casualty Co. v. Padgett, above cited; Jordan v. Shelby Mut. Plate Glass & Casualty Co., 4 Cir., 142 F.2d 52, 55. In the Jordan case at page 55 of 142 F.2d Judge Dobie quotes with approval the following language from a Virginia case in Phoenix Indemnity Co. v. Anderson, 170 Va., 406 at page 410, 196 S.E. 629: "Accurately speaking, Hurley was not using the Kavanaugh automobile with permission at all. He was ordered to take it to Winston-Salem for the purpose of checking in some hides * * * and to return immediately to Lynchburg. The only permission which he had was permission to do those things which he was instructed to do * * *." This, I think, is the logical and just rule and should be applied in this case. At the time of the accident in which plaintiff was injured, Bryant was not driving with the permission of McLamb at all, since the only permission Bryant had was to drive the truck to the jail in Whiteville. This he did and when he drove it thereafter his act was without McLamb's permission.

The Court has not overlooked the unequivocal statement of Bryant that he was authorized by McLamb to drive the truck to Harnett County in search of a bondsman and that the accident occurred while he was endeavoring to carry out the mission. Of course, if this statement is accepted as true, the defendant should be held liable, but I do not accept it. In the first place such statement will not stand up before the more reliable statements of the two patrolmen and the jailer; besides, it becomes highly unreasonable when certain undisputed evidence is considered.

 Plaintiff relies heavily on the evidence of Patrolman Grady, who had a conversation with McLamb on the morning after the accident. In that conversation McLamb told Grady that Bryant had his permission to drive the truck at the time and place of the accident. The defendant objected to this evidence as hearsay, but the Court decided to hear it and overruled the objection. Upon study, I am of the opinion that there is some validity to the objection. However, I am also of the opinion that the statement of McLamb to Grady, if considered as substantive evidence, together with the statement of Bryant, are not sufficient to overcome the statements of the other two patrolmen and the jailer at the trial, so as to justify a finding that plaintiff has carried the burden of proving the sole ultimate fact, that is, that at the place and time of the accident Bryant was driving the truck with the permission of the insured.

 Plaintiff's contention that he is aided by N.C.G.S. § 20–71.1., making ownership of a vehicle prima facie evidence of agency in tort actions, has no

merit. This statute "was designed and intended to apply, and does apply, only in those cases where the plaintiff seeks to hold an owner liable for the negligence of a nonowner operator under the doctrine of respondeat superior." Roberts v. Hill, 240 N.C. 373, 378, 82 S.E.2d 373, 378. The question of agency is not here involved; there is only the question of permission.

Upon the facts found and conclusions of law reached, it is adjudged that plaintiff recover nothing and that the defendant recover costs.