**156 So. 408**

## BUISSON v. POTTS et al.

### No. 32790.

July 2, 1934.

Rehearing Denied Aug. 3, 1934.

Harry V. Booth and G. Randell Whitmeyer, both of Shreveport, for applicant.

Wise, Randolph, Rendall & Freyer, of Shreveport, for respondent.

ODOM, Justice.

Plaintiff, while crossing a street in the city of Shreveport, was struck and seriously injured by an automobile owned by the Long-Bell Sales Corporation, which is domiciled without the state but has an office in Shreveport, this state, where it transacts business. This office and place of business is in charge of Wm. B. Steen as general manager, who has control and supervision of the corporation's business in Shreveport. No other officer or director of the corporation is present in the state. Frank Potts, Sr., and E. J. Long were employees in the office, Potts as chief clerk and Long as paymaster.

The corporation owned an automobile and kept it at its office and place of business for the use of the general manager and the above named employees, when on missions for the corporation. It was the duty and custom of Potts to post the corporation's mail at the close of each day's business, and for that purpose he used the automobile; the post office being located some distance from the corporation's place of business. At the close of

the day's business, which was about nightfall, Potts took the mail, got into the car, and drove to his home a few blocks away; Long going with him in the car. Because he was tired, Potts abandoned the car at his home, put it in charge of his minor son, who was between sixteen and seventeen years of age, with instructions to drive the car to the post office and mail the letters. The son obeyed instructions and proceeded to drive the car toward the post office; Long, who lived only a short distance from the post office, remaining in the car for the purpose of going home. While on the way to the post office, young Potts ran the car against plaintiff and injured him.

Plaintiff brought suit against Frank Potts, Sr., the father of the driver of the car, and against the corporation, the owner of the car, for damages. The corporation set up the special defense that young Potts was not its agent or employee, that he was not driving the car with its knowledge or consent either express or implied, that the relationship of master and servant did not exist between it and him, and for that reason, if for no other, it was not liable.

The testimony adduced at the trial showed beyond question that plaintiff's injury and resulting damage were due solely to the negligence of young Potts, the driver of the car. An effort was made to show that plaintiff was guilty of such gross contributory negligence as to bar recovery, even conceding that young Potts was negligent. On this point, both the trial court and the Court of Appeal held against the defendants and we think correctly.

The trial court found for plaintiff and rendered judgment in solido against Frank Potts, Sr., and the corporation for $2,500.00. On appeal, the Court of Appeal, Second Circuit, affirmed the judgment as to Potts but reversed it as to the corporation, holding that under the circumstances disclosed, it was not liable under the law.

Plaintiff applied to this court for writs, which were granted, for the sole purpose of reviewing the case in so far as the Court of Appeal held that under the law the defendant corporation was not liable to plaintiff for damages, conceding that plaintiff's injury and damage were due solely to fault and negligence of young Potts, the driver of its car.

The court's holding as to the corporation was based upon its finding that the relationship of master and servant did not exist between the corporation which owned the car and young Potts, the driver, at the time of the accident, and that as a matter of law, while Potts, Sr., who was an employee of the corporation and authorized to drive the car and while driving it on a mission for his employer was its agent, yet he had no right to substitute another in his place for the driving of the car on a mission for the employer.

We have read the record to see whether Potts, Sr., had express or implied authority to substitute his son or any one else to drive the car, and we find that he had none. Furthermore, the record fails to show to our satisfaction that Steen, the general manager, who represented the corporation, had any knowledge that young Potts had at any time previous to this occasion been permitted to

drive the car by his father, although he had done so two or three times. The boy was a student in high school and rarely visited defendant's place of business. Both Potts, Sr., and Long, employees in the office, testified that on two or three occasions young Potts had driven the car with his father's consent, but there is nothing to show that he took charge of it at the company's office and drove it away so that Steen, the general manager in charge, could have seen him. In fact, there is nothing to show that Steen knew that he was to drive the car on this occasion or that he had ever driven it.

The record makes it clear that the main office of the corporation was in Kansas City, and that Steen was general manager and in full charge of the Shreveport branch office, and that no officer of the corporation other than Steen and no member of the board of directors was then present in this state. The corporation therefore acted in this state by and through Steen, who alone could speak for and bind it. If he had no knowledge that young Potts had been permitted by his father to drive the car, then the corporation had none.

Counsel for plaintiff argue that inasmuch as Potts, Sr., and E. J. Long had knowledge that young Potts had driven the car, their knowledge is attributable to the corporation. That is not true as a matter of law. They were only employees in the office of the corporation. Their duties were clerical and they had nothing whatever to do with the management of the business. The corporation did not intrust the management and conduct of its affairs to them. Steen, and Steen alone, represented it here.

In Marlatt v. Levee Cotton Press Co., 10 La. 583, 29 Am. Dec. 468, the court said:

"No company can. act, except through its president or other agents; and in acts of this kind, the president, or other appointed administrator of the company, is the company itself, to all intents and purposes."

See Civ. Code, art. 438; Serio v. American Brewing Co., 141 La. 290, 74 So. 998, L. R. A. 1917E, 516, and authorities cited.

Text-writers and numerous other cases might be cited to the effect that the only knowledge a corporation can have is that which comes through its officers or appointed administrators. Potts, Sr., and Long were not the appointed administrators of the defendant corporation and such knowledge as they had was not binding upon the corporation, their employers.

The defendant's car was kept for the use and convenience of its employees while engaged in performing services for their employer. While engaged on missions for their employer, they were its agents for the handling of the instrumentality intrusted to them for the furtherance of its business. Because of the relationship of employer and employee or master and servant which existed between the corporation and them, the corporation was responsible for the manner in which they handled the car and was liable for such damages as might arise from their negligence. This is upon the principle that: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." Civ. Code, art. 2317.

Young Potts was not the agent or employee of the defendant corporation. The relationship of master and servant did not exist between them, and therefore the corporation was not liable for his negligence unless his father, who was intrusted with the car, made him the corporation's agent by substituting him as the driver of the car. The question therefore is whether, under our law and jurisprudence, an employee who is intrusted with and authorized to drive his employer's automobile on a mission connected with his employment, can, without authority express or implied, substitute another driver in his stead and thereby delegate his authority so as to render his employer liable for the other's negligence.

The answer is found in the Civil Code, article 3007, which says that "the attorney is answerable for the person substituted by him to manage in his stead, if the procuration did not empower him to substitute." The word "attorney" as used in this article is synonymous with the words "agent" and "mandate." A mandate, procuration, or letter of attorney, says the Code, article 2985 "is an act by which one person gives power to another to transact for him and in his name, one or several affairs." Under article 3007 of the Code, if the mandate or procuration of the employee to operate his employer's automobile on missions connected with his employment does not empower him to substitute another to operate it in his stead, the employee and not the employer is answerable for the damage caused by the negligence of the party substituted.

In the recent publication "Restatement of the Law," by the American Law Institute, under the general heading "Agency," vol. 1, § 81, it is stated:

"Unless otherwise agreed, a servant is not authorized to permit or employ another to perform acts of service which he is employed to perform."

Section 78 of the same work reads as follows:

"Unless otherwise agreed, an authority to conduct a transaction does not include authority to delegate to another the performance of the acts incidental thereto which involve discretion or the agent's special skill. Such authority, however, includes authority to delegate to a sub-agent the performance of incidental, mechanical and ministerial acts."

In comment (b) following section 241 of this work, it is stated:

"A servant or agent is not authorized to delegate his powers, except as stated in Secs. 77–81. A servant is not ordinarily permitted to transfer to another the custody of an instrumentality entrusted to him. If however there is an emergency as where he becomes disabled, authority to do so may be found. In such a case, a new custodian may become the servant of the master, this depending upon whether the servant employs a new servant or whether such new custodian becomes merely a bailee not subject to the control of the master. If the new custodian is not a servant, the master becomes liable for his conduct only under the rule stated in this section."

In a comment following section 78 as above quoted, another exception to the general rule is recognized; it being stated that an agent

is authorized to appoint another agent if "an unforeseen contingency arises making it impracticable to communicate with the principal and making such appointment reasonably necessary for the protection of the interest of the principal." .

It thus appears that the general rule announced in this "Restatement of the Law of Agency" is that unless it is otherwise agreed, a servant is not authorized to delegate to another the performance of the duties intrusted to him and that in substance is what our Code says, and that, in sum, is the rule announced in such, well-known works as Cyc., Corpus Juris, and R. C. L. The principle underlying this general rule is that the relationship of master and servant cannot be imposed upon any one without his consent, express or implied. The master is free to choose his own servants and is answerable only for those chosen by him. Cases may be found which seem to hold that one intrusted with the operation of an automobile may substitute another to drive it and that if the substitute, while carrying out the mission originally intrusted to the servant by the master, negligently causes injury to another, the master is liable. But as was said in the case of Butler v. Mechanics' Iron Foundry Co., 259 Mass. 560, 156 N. E. 720, 721, 54 A. L. R. 849, those cases "rest upon the fact that the employment of the assistant was expressly or impliedly assented to, or was ratified, or there existed an emergency requiring additional assistance, where authority to procure additional assistance might be implied."

In a case note found in 44 A. L. R. 1382, it is stated, under the heading "As affected by question of implied authority to employ assistant": "It may be stated generally that the master or employer is not liable for the acts of one employed by his servant or employee, without authority, express or implied, to discharge a duty intrusted to the servant or employee (18 R. C. L. 785), and it has been accordingly held that the owner of an automobile is not liable for injury or damage resulting from the negligent operation of the automobile by one who was permitted to operate the same by the one to whom it was intrusted by the owner, but who had no authority, express or implied, to permit another to drive."

See 39 C. J., § 1459, p. 1271.

■ The Court of Appeal in this case held that: "The agent has not the right of substitution unless specially authorized by his principal. If the agent engages a substitute to act for him without the consent of the principal, the agent alone is responsible for the substitute's negligent or unlawful acts," citing Civ. Code, art. 3007.

No fault can be found with this general statement of the law. This rule, however, is subject to certain well-recognized exceptions, as in cases where the principal or employer owns an instrumentality, such as a locomotive or motor vehicle, which is used in connection with or in furtherance of his business, and intrusts the operation of the instrumentality to his servant, the servant may substitute another to operate it in cases of emergency; where an unforeseen contingency arises making it impossible for him to operate it or to communicate with his principal; where the substitution is reasonably necessary for the protection of the interest of the

principal. These exceptions find no application, however, in the case at bar.

Referring now to our own jurisprudence, we find that it was held in Rusha v. Coyle Co., 149 La. 731, 90 So. 144, 145, that "the owner of an automobile is not liable for damages resulting from the negligence of some one else in the operation of the car, without proof or reasonable presumption that the person who operated the car was employed or authorized by the owner to operate the car."

In Atkins v. Points, 148 La. 958, 88 So. 231, 232, the court quoted with approval the following from 18 R. C. L. 813, par. 267:

"If the vehicle is being used to further the owner's interests and is *under the control of a driver who is engaged by him*, he will as a rule be held liable for injuries resulting from its negligent management on the highway." (Italics ours.)

See, also, Bardt v. Champon, 6 La. App. 763; Lanauze v. Baldwin et al., 2 La. App. 345.

Two leading cases relied on by counsel for plaintiff are Black v. Rock Island Ry. Co., 125 La. 101, 51 So. 82, 26 L. R. A. (N. S.) 166, and Mercer v. Rosenblath, 156 La. 249, 100 So. 414. These cases have no application here. In the Black Case the persons operating the locomotive were held to have been the agents in Louisiana of a foreign corporation, and in the Mercer Case there were two per-

sons in the car, one an employee and the other the minor son of the owner.

Finally it is argued that inasmuch as E. J. Long, who was an employee of the defendant corporation, was in the car with young Potts when the accident occurred, the corporation is liable under the theory that where one is authorized to operate an automobile for his employer and substitutes another for that purpose, the employer is liable for the negligence of the substitute if the employee remains in the car with the substitute and can control its operation.

The rule invoked, if sound, does not improve plaintiff's position in the present case for the reason that Long was in the car, not as the agent or employee of the corporation, not on any mission for his employer, but only for the purpose of going to his home. It was not his duty to mail the letters, nor did he pretend to be assisting young Potts to do so. It was the duty of Potts, Sr., to mail the letters and he substituted his son to perform this duty for him and put him in charge of the car. Long had nothing whatever to do with the operation or control of the car. If he had been in control of the car as the agent of the corporation, then he too would have been liable to plaintiff for his injuries and it is not suggested that he was.

For the reasons assigned the judgment of the Court of Appeal is affirmed.