**SMITH v. HOWARD CRUMLEY & CO., Inc., et al.**

**ANDREWS v. SAME.**

Nos. 5333, 5334.

Court of Appeal of Louisiana. Second Circuit.

Dec. 11, 1936.

Lee & Lee and Harry V. Booth, all of Shreveport, for appellants.

E. W. & P. N. Browne, of Shreveport, for appellees.

TALIAFERRO, Judge.

Plaintiffs in these consolidated cases were injured when the automobile of T. L. Thompson, in which they were riding as guests, was run into by the car of defendant E. W. Lauhon, driven by A. G. Aiken, in the northern part of the city of Shreveport at the intersection of Highway No. 8 with the road leading to the Municipal Airport. The Thompson car, a five-passenger Ford, was going north on Highway No. 8, the main thoroughfare leading north out of Shreveport, and had the right of way. The Lauhon car, a Chevrolet, was traveling south from the airport. The collision occurred in broad daylight. Lauhon at the time was a salesman of Howard Crumley & Co., Incorporated, dealer in the products of the Chevrolet Motor Company. Aiken was a prospective purchaser. He took the wheel of the Chevrolet car a few hundred yards north of the accident and was driving, out of a desire to be impressed with its "feel." He is an experienced operator of Chevrolet automobiles. These suits were instituted against Lauhon, Howard Crumley & Co., and its insurer, the Travelers Insurance Company, to recover damages resulting from the collision. The negligence charged to Aiken who, it is alleged, was then

and there under the control and direction of both Lauhon and Howard Crumley & Co., as the sole cause of the collision, in substance is that he did not bring his car to a stop before attempting to cross the intersection, as is required by law and a sign in large letters across the road he was traveling; that he did not maintain a proper lookout for vehicular traffic on Highway No. 8; that he failed to accord to the Thompson car the right of way to which it was entitled; and, last, by not giving warning of his approach.

The theory of plaintiffs' suits and the basis of their demands against Howard Crumley & Co. are reflected from the following allegations of their petition:

"24. That Howard Crumley & Company, Inc., at the time of the collision hereinafter described, and at the present time, was and is engaged in the business and occupation of selling and retailing Chevrolet automobiles to the general public, including corporations, companies and individual members thereof; the said corporation being also engaged in the business of selling to the general public all types and kinds of old and used automobiles obtained by said corporation as part payment of the purchase price of said Chevrolet automobiles.

"25. That Howard Crumley & Company, Inc., hires, employs and engages agents and salesmen for the purpose of contacting prospective purchasers of Howard Crumley & Comany, Inc., automobiles, demonstrating Chevrolet cars to said prospective purchasers and arranging sales of Howard Crumley & Company, Inc. automobiles to the prospective purchasers and, in each individual case, for the use, benefit and interest of Howard Crumley & Company, Inc., and the salesman in charge of and handling the sale.

"26. That E. W. Lauhon, defendant herein, was in the automobile driven by the said Aiken at the time of the said collision, and that the said Lauhon and Howard Crumley & Company, Inc., through its said agent, Lauhon, had full, complete and direct control over said automobile in view of the facts as hereinafter shown.

"27. Petitioner now avers that at the time of the collision and prior thereto, the said Lauhon, a salesman for defendant, Howard Crumley & Company, Inc., was demonstrating a Chevrolet automobile to the said Aiken for the express purpose of effecting a sale of a Chevrolet auto-mobile to the said Aiken for his, the said Lauhon's, own benefit and interest and for the benefit and interest of his employer, the said Howard Crumley & Company, Inc.

"28. That at the time of the collision hereinabove referred to, and at the present time, in order to effect sales of Howard Crumley & Company, Inc. Chevrolet cars, it was and is the general custom of automobile agents and automobile salesmen of Howard Crumley & Company, Inc., to request and allow prospective purchasers of Howard Crumley & Company, Inc. Chevrolet cars to drive and operate Chevrolet automobiles for the purpose of ascertaining the performance thereof, all of which was and is done with the full knowledge, consent and authorization of the officials and managers of Howard Crumley & Company, Inc.; the same general custom and method being also followed by all Shreveport automobile agencies and their salesmen for the purpose of effecting sales of their automobiles.

"29. Your petitioner now avers that in accordance with said general practice and custom, the said Howard Crumley & Company, Inc. the said Lauhon permitted and directed the said Aiken to drive the said automobile prior to and at the time of the collision in which your petitioner was injured, and that said Aiken was driving said automobile on said occasion, under the control and direction of the said Lauhon and was driving it at his instance, the said Lauhon being seated in said car at the time of the collision, all of which was with the full consent, authorization, approval and very necessity of the business operated by Howard Crumley & Company, Inc."

Defendants severed in their answers. Lauhon admits that at the time of the accident he was a salesman for Howard Crumley & Co. and that Aiken was driving his car as a prospective purchaser, over whom he had no control whatever; that he did not either force or require him to drive the car, but, on the contrary, Aiken was driving it because he desired to do so and in order to learn the character of its performance. He denies any negligence on his part or that of Aiken as a cause of the accident, but, in the alternative, alleges that Thompson was negligent in driving his own car squarely in front of the Chevrolet and in not keeping a proper lookout for traffic on the airport

highway. Thompson's contributory negligence in these respects is pleaded in bar of plaintiffs' right to recover. No negligence whatever is alleged against plaintiffs.

Howard Crumley & Co., after denying any liability to plaintiffs, avers that Lauhon's relation to it was that of salesman on a commission basis; that neither at the time of the collision, prior thereto, nor since, has he been in its employ within the legal significance of that term, nor under any contract with it which gave rise to the relationship of master and servant; that at the time of said collision, he was not acting under orders from it and had not been sent on any mission for it, but was on a mission of his own choosing and for his own personal benefit; that respondent was in no way responsible for any negligence on his part or on the part of any one acting with or for him.

The insurance company's answer is a general denial of the material facts alleged and relied upon by plaintiffs to recover, and a special denial of any liability to them under the stipulations of the policy issued by it to the insured, Howard Crumley & Co.

Plaintiffs' demands against Howard Crumley & Co. and its insurer were rejected. There was judgment for each plaintiff against Lauhon. They appealed after an unsuccessful effort to secure a rehearing. So far as Lauhon is concerned, the judgments as rendered, to the extent of the awards against him, are now final. However, appellants here complain of the inadequacy of the awards.

■ We feel justified in assuming that appellees now concede that the accident out of which these suits arose happened solely because of the negligence of Aiken, the operator of the Chevrolet car. This phase of the case was not argued by their counsel orally nor is it touched upon in briefs. A study of the testimony bearing upon the issue of negligence leaves no doubt in our minds that Aiken's negligence only caused the collision. The Thompson car had the right of way and had the legal right to assume that traffic entering Highway No. 8 from the airport road would recognize this superior right· and stop, as required by law and the sign across the road near the intersection, before attempting to cross it. Aiken utterly failed to do this, but, on the contrary, drove heedlessly and rapidly into the intersection and into the Thompson car, without there being a chance for it to alter its course so as to avert the collision. If the accident occurred from the concurrent negligence of both operators, they and· their principals would be responsible to plaintiffs. The lower court held that as the car belonged to Lauhon, was under his control, and subject to his direction, while being driven by Aiken, the relation of principal and agent automatically arose from these facts, and for this reason Lauhon was responsible for the results of the accident. And since Lauhon did not appeal, has not answered plaintiffs' appeals, and has made no appearance in this court, the lower court's rulings against him are not subject to revision here.

■ Appellees do not seriously urge the defense interposed by them that Lauhon was not an employee of Howard Crumley & Co. at the time the accident occurred and that the relation of master and servant did not then exist between them. We presume this defense has also been abandoned. We think it untenable under the undisputed facts of Lauhon's employment. The rule recognized and applied in Jones v. Shehee-Ford Wagon & Harness Company (La.App.) 157 So. 309, and in Crysel v. Gifford-Hill & Company (La. App.) 158 So. 264, finds application here.

Pretermitting for the present a discussion of the nature and extent of plaintiffs' injuries and the amount of damages they are entitled to, we take up for decision the paramount issue in the case, viz., under the facts disclosed, may the dealer, Howard Crumley & Co., be held to responsibility for the negligence of Aiken, the prospective buyer?

The basic facts of the case are virtually undisputed. The parties are at the greatest possible variance in their respective contentions as to what these facts establish and as to the legal consequences flowing therefrom. Aiken was in Howard Crumley & Co.'s office the day of the accident and had just made the last payment on a 1933 Chevrolet he had purchased from it through Lauhon, as salesman. The company's president, Mr. Crumley, suggested to Lauhon that he endeavor to sell Aiken a new car. In keeping with the suggestion, Lauhon approached Aiken on the subject. He and his wife entered· Lauhon's car and the three drove through the city to and up the Airport road. The accident occurred as they were returning

to the city in the manner heretofore related.

Mr. Crumley's testimony is all we find in the record touching the prevailing custom and practice among car dealers with regard to the authority of salesmen and the limitations placed upon their activities when trying to sell cars or in interesting prospects in the purchase thereof. He stated that salesmen were required to own a car manufactured by the parent company the dealer represented, but were not required to demonstrate their own cars to a prospect as a means of arousing interest therein. He could do so or not, as he desired. He is left virtually free to adopt and follow such ethical tactics as he thinks best to effect sales. The amount of his income depends upon his own success in making sales. Mr. Crumley admitted he had knowledge that his salesmen would allow prospective purchasers to operate their cars in order to impress the prospect with its fine qualities of operation, etc., but that no rule of his company required that this be done; no objection, however, was offered on his part to the practice. He also stated that many persons, since automobiles have been so wonderfully improved, do not demonstrate new cars before purchasing; that a majority of purchasers are content to buy without previously riding in the car they purchase.

■ Plaintiffs do not specifically allege that Aiken became the agent or subagent of Howard Crumley & Co. the moment he took the wheel of the Chevrolet, but do allege, as a legal conclusion, that since Lauhon was in the car beside Aiken and had the control and direction thereof, it was in reality at the moment of impact being operated by him; that Aiken for the time being was a mere figurehead, exerting only physical and mechanical effort needful to keep the car moving. However, on the other hand, they do argue that when Lauhon turned the wheel over to Aiken, as between them, Aiken became Lauhon's agent for whose negligent act Lauhon, as principal, became responsible. This conclusion is eminently a correct one.

Counsel have provided us with copious briefs elaborately discussing the issue of agency vel non. All Louisiana cases deemed to have any bearing upon this question and many from other jurisdictions are cited or discussed. These support the position of one side or the other. We have carefully read the briefs and most of the cited cases and have given serious study to the record as a whole. We are convinced that resort to our own Civil Code and the fundamental principles governing mandate will reveal the controlling law of the case.

If Lauhon had been driving the Chevrolet car instead of Aiken, when the accident happened, it would hardly be argued that Howard Crumley & Co. would not be responsible for damages resulting from his negligence, because he was its agent and employee and would have been performing an act (demonstrating the car) clearly within the scope of the powers with which he was clothed as agent. Mandate may take place for the joint interest of both parties. Civ.Code, art. 2986. Lauhon had a personal interest to further by inducing Aiken to purchase a car. At the same time, the interest of his employer would be subserved by so doing; and when he entrusted the operation of the car to Aiken, those interests were the motivating influence to his action. Aiken, in a sort of dual capacity while driving the car, represented himself on the one side and Lauhon and Howard Crumley & Co. on the other. If, from the demonstration, he should decide to buy a new car, he would thereby advance the interest of all three parties, and in such a case neither he nor Lauhon would have been criticised by the dealer because of the methods adopted to effect the sale.

This line of reasoning is advanced to meet the suggestion that Aiken could not act as agent of the dealer while demonstrating for his own satisfaction the car of the salesman, the kind he was planning to purchase from the dealer.

■ Plaintiffs urge that the salesman, as a concomitant of his employment, was clothed with implied power to allow prospective purchasers to demonstrate his own car in the ultimate hope of making a sale for the dealer. We believe this position sound. Article 3000 of the Civil Code reads:

"*Implied Powers.*—Powers granted to persons, who exercise a profession, or fulfill certain functions, of doing business in the ordinary course of affairs to which they are devoted, need not be specified, but are inferred from the functions which these mandataries exercise."

The principal function of a salesman, as mandatary, is to further the interest of

the dealer by selling the products he is handling. He is certainly authorized to demonstrate his own car in the performance of that function. It seems absurd to say that his authority in this respect forbids permitting the prospective purchaser, the one most interested in the car, to drive it in order to satisfy himself as to its reputed qualities. To refuse the request of the prospect to drive would almost invariably result in a loss of sale. It is almost common knowledge that such a request is never refused, but, on the contrary, the prospect is oftimes urged by the dealer or salesman to personally demonstrate the car in which he is interested. We should add here that in view of the facts of this case, we do not think the ownership of the car a significant fact in the case. Haywood v. Noel et al. (La.App.) 154 So. 484. The salesman was required to own the car for use in the employer's business. For all legal intents and purposes, the situation is the same as it would be had the car belonged to the dealer.

We believe that a decision of the case may be safely predicated upon the proposition that Lauhon, by allowing Aiken to operate his car, acted within the scope and power of his employment, for the consequences of which his employer is responsible, but for the sake of argument, should it be conceded that this position is erroneous, plaintiffs are entitled to recover under the law governing substituted agency or subagents, as we shall now endeavor to demonstrate.

■ It is fundamental that an agent has not the power to substitute another to perform the duties of his mandate, unless expressly or impliedly authorized so to do by the principal. Civ.Code, art. 3007. But if he does delegate to another, in whole or in part, the power and authority confided to him by his principal and his acts in this respect are ratified and approved, expressly or impliedly, by the principal, of course, the principal becomes bound by the acts of the substitute. See verbo Agency, vol. 2, p. 165, American Jurisprudence. The same may be said of the principal if he allows the agent to habitually exceed his powers without protest or objection on his part, or where the principal knowingly accepts and retains the benefits and advantages accruing to him from the acts of the unauthorized substitute. American Jurisprudence, vol. 2, p. 181. In the present case, even though it be conceded

that there was no implied power vested in Lauhon to allow prospects to demonstrate his own car for the ultimate benefit of the dealer, it is well established that the practice was indulged in by salesmen, to Howard Crumley & Co.'s knowledge; that no objection was registered against it; and it follows that the benefits and advantages resulting from the practice were accepted and retained by it. This being true, it is our opinion the dealer is exposed to liability for the negligence of Aiken, the subagent, and especially is this true in the present case, since the salesman remained in the car beside Aiken, was overseeing its operation, and was in a position to, and in a measure did, direct and control the driver. The case of Buisson v. Potts et al., 180 La. 330, 156 So. 408, 409, illuminates this line of reasoning. The decision in that case turned upon lack of knowledge on the part of the employer of Potts, Sr., that he allowed or substituted his son to operate the employer's car in the transaction of its business. The court made it quite clear that had the employer authorized, or if it had knowledge of the substitution, it would have been responsible for the negligence of the younger Potts. In the course of the opinion, the court said:

"We have read the record to see whether Potts, Sr., had express or implied authority to substitute his son or any one else to drive the car, and we find that he had none. Furthermore, the record fails to show to our satisfaction that Steen, the general manager, who represented the corporation, had any knowledge that young Potts had at any time previous to this occasion been permitted to drive the car by his father, although he had done so two or three times."

. It follows that if the dealer is responsible for the negligence of Aiken, the insurer, under its policy contract, is in solido bound to the same extent.

■ Although the Ford car was overturned from the impact, plaintiffs fortunately sustained no permanent injuries nor broken bones. Neither suffered organic disorder nor injury. Miss Andrews was a teacher in the Vivian High School. She was immediately carried to a Shreveport sanitarium after the collision, where she was a patient for 45 days. In addition to the shock and general shakeup, her right ischium was fractured, but not displaced. This fracture produced considerable pain

over a period of several weeks. A cast was worn for six weeks, attended with much discomfort. She resumed teaching after being discharged from the sanitarium and was doing so at the date of trial, some four or five months after the accident. She testified that during inclement and cold weather, she suffered pains and aches in her lower back. These are felt also when she stoops over or tries to lift heavy objects. Her physician testified that her condition was entirely satisfactory and that no further serious trouble was anticipated, as an aftermath of the accident. The lower court awarded this plaintiff $1,000, for pain, suffering, shock, etc., and $484.47 to cover hospital and physicians' bills, as well as for loss of salary as teacher and other expenses necessarily incurred because of her injuries. We believe her criticism of the award in her favor well founded. In view of the seriousness of the shock she experienced, coupled with the enforced stay in the sanitarium for 45 days, plus the pain, suffering, and discomfort she endured, she is certainly entitled to substantial damages. The award on this score should be increased to $1,500.

Mrs. Smith, also a teacher, was more fortunate than Miss Andrews. Her injuries were far less serious. She was taken to a sanitarium and treated, but was discharged after a few hours. The expense of her treatment there was only $5. Her left cheek was incised and her left thumb cut, but not very seriously. She missed only three days from school duties. She was also shocked and jarred very much, but her injuries were superficial. She complains of the lack of function in the injured thumb, but proper use of this member will probably restore its former usefulness. The lower court gave her judgment for $730. We think this adequate.

For the reasons herein assigned, the judgments appealed from, in so far as plaintiffs' demands against Howard Crumley & Co., Incorporated, and the Travelers Insurance Company are rejected, is annulled, reversed, and set aside; and there is now judgment in favor of plaintiffs and against defendants E. W. Lauhon, Howard Crumley & Co., Incorporated, and the Travelers Insurance Company in solido as follows:

For plaintiff Miss Meva Andrews in the sum of $1,984.47, with legal interest thereon from judicial demand herein until paid; and

For plaintiff Mrs. Earl L. Smith in the sum of $730, with legal interest thereon from judicial demand until paid; costs in both cases are assessed against defendants.