**BARR et al. v. FIDELITY & CASUALTY CO. OF NEW YORK.**

No. 5914.

Court of Appeal of Louisiana.
Second Circuit.

March 8, 1939.

Rehearing Denied March 31, 1939.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellant.

Harry V. Booth and H. B. Lingle, both of Shreveport, for appellee.

DREW, Judge.

The lower court, in a well written opinion, has stated the issues and correctly found the facts in this case. It is as follows:

"The present suit is one for damages arising out of an intersectional collision occurring at 2 A. M., on the morning of December 18, 1937, between a car owned and operated by Miss Edna Saenger, the same being a coupe, and another coupe operated by Mrs. Louise Morton. The accident occurred at the intersection of Line Avenue and Robinson Place. The plaintiff, Mrs. Barr, was a guest in the car operated by Miss Saenger.

"Line Avenue runs north and south and is 24 feet wide from curb to curb. Robinson Place runs east and west and is 21 feet wide from curb to curb, on the east side of Line Avenue. On the west side of Line it is quite wide, divided into two paved portions by a neutral ground in the center. The south curb of Robinson, east of Line Avenue, is about 20 feet south of the south curb of Robinson, west of Line Avenue, there being a jog in the street at that point.

"It is alleged by plaintiffs that Mrs. Morton was proceeding from west to east, angling somewhat to the south, across the intersection when she was run into by the car operated by Miss Saenger.

"There were only three witnesses to the accident, they being the three occupants of the two cars. Mrs. Barr knew nothing about same until the very moment of the impact, and could give no particulars whatsoever.

"Mrs. Morton testified that she lived just two doors east of the intersection; that she was proceeding east at the time, and when she reached the stop sign on Robinson west of Line Avenue (Line being a favored street), she almost stopped, or at least slowed up enough to permit her to shift into second gear, looked both ways and, seeing nothing approaching, went on across the intersection; that when her car had practically gotten across, her front wheels being a few feet beyond same, she was struck on the right side by the Saenger car, the impact on the Morton car being practically in the middle. She says she went home, got her husband, and both of them came back. She testified that her car was shoved across Robinson a little to the northeast, where it landed in the front yard of a home; that this distance was some 23 feet; that the sidewise skid marks showed very plainly on the street up to the curb. Mr. Morton testified in regard to these same skid marks; that he also examined the pavement of Line Avenue south of the intersection and could find no skid marks there or anywhere else, except those mentioned above. He also testified that the skid marks which he did find were 20 or 25 feet long. Of course, this could not have been so, as the street was only 21 feet from curb to curb, but Mr. Morton made it plain that he was just guessing at this distance.

"Mr. Hitzfield, a claim adjuster for defendant insurer, made an investigation the next day, or rather the same day. He testified that he found skid marks on Line Avenue beginning a short distance south of the south curb of Robinson and extending somewhat in a curve toward the northeast corner of the intersection. He could

not find the skid marks testified to by Mr. and Mrs. Morton.

"We hardly think it worth while to give much of the testimony of Miss Saenger, as it is so unsatisfactory. She contradicts herself at times and is contradicted by others as to statements made by her as to how the accident happened. Her testimony is nothing like as satisfactory as that of Mrs. Morton, and in the main we must accept that of Mrs. Morton. We have some doubt as to the correctness of Mrs. Morton's testimony as to the exact spot her car was when struck. It may have been that it was farther out in the intersection, and we rather think it was, but this makes very little difference, as plainly she had almost cleared the intersection. Plainly, Mrs. Morton violated the law when she failed to stop before entering the intersection, and that may have had something to do with the resulting collision, in which event it would be negligence; but if Miss Saenger was also negligent and her negligence entered into the result, then it makes no difference in a case of this kind whether Mrs. Morton was negligent or not. We also have some doubt as to whether Mrs. Morton looked both ways before entering the intersection. If she actually looked before entering the intersection, and there was nothing to obstruct her view, then certainly she could have seen the lights of the Saenger car coming. But the evidence does not make clear whether her view was obstructed or not.

"Mrs. Morton says that she went into second gear just before entering the intersection. If we accept this as a fact, and we must, then she was bound to have been traveling at a comparatively slow speed, much slower than the Saenger car. Judging from the impact on the front end of the Saenger car, it must have been traveling at a fair rate of speed at the time of the impact. Mrs. Morton says it was 37 feet from the point where she changed gears to the place where she was struck; she was going slowly, so at the time she entered the intersection, necessarily the Saenger car was several times 37 feet away from the intersection. Miss Saenger says she saw the Morton car before it entered the intersection, and saw it was not going to stop. As we view the testimony as a whole, if she saw this, then she saw it at a time when she had every opportunity to have stopped, or at least do something to have avoided the accident.

But she says she was practically in the intersection when she saw this, and when she did see it she put on her brakes and veered her car to the right. But we cannot accept her statement as a proven fact as to where her car was when she saw the Morton car. If she did not see the Morton car, which we are satisfied entered the intersection first, then she was just paying no attention to what she was doing, insofar as cross-street traffic was concerned. It is true that it was held in Smith v. Howard Crumley & Co., La.App., 171 So. 188, that one traveling on a favored street, can assume that one traveling the cross street will stop before entering the intersection, but this does not absolve the driver on the favored street from all care; it is still his duty to look out for cars entering from those cross streets; he must still maintain an adequate lookout. See Prudhomme v. Continental Casualty Company, La.App., 169 So. 147; and cases therein cited. So if Miss Saenger saw the Morton car before entering the intersection and saw it was not going to stop, then it was her duty to have avoided the accident, if she had an opportunity to do so. That she had such opportunity, we are satisfied if she even saw the Morton car under such circumstances. If she did not see the Morton car, then she utterly failed to keep a proper lookout, and have her car under control.

"Defendant has pleaded contributory negligence on the part of Mrs. Barr, the guest.

"There is no testimony in the record as to any speeding on the part of Miss Saenger or any violation of the speed laws on her part, so there is no necessity for discussing this phase of the contributory negligence plea.

"Was Mrs. Barr negligent in not seeing the Morton car and not calling the attention of Miss Saenger to it? Mrs. Barr was sitting on the right, the seat of the car being quite low, and her vision to the left being somewhat obscured by different things. In the case of Brown v. Dalton, 143 So. 672, we find the duty of the guest set forth at some length. The gist of the decision is that the guest can, to a reasonable extent, rely on the care and proper management of the one operating the car; that the guest does not need to keep a constant lookout for unexpected dangers, but may rely reasonably on the driver, and must exercise reasonable care to protect himself. If there was anything at that

particular intersection which was dangerous (that is, more dangerous than any intersection), and this was known to Mrs. Barr, then it was her duty to keep a lookout for it. If the danger was to be expected, then the guest must keep a lookout, otherwise all the guest has to do is exercise reasonable care. We cannot say that Mrs. Barr was guilty of contributory negligence.

"From the above, it follows that both plaintiffs are entitled to recover. Mr. Barr sues for $910.00 expenses already incurred, and $500.00 to be incurred in future. As we view the record, it shows that Mr. Barr has paid out the sum of $1002.57, and further operations on the nose of Mrs. Barr are advisable, but the proof on this score is too meager to base a judgment on it. So Mr. Barr should have judgment in the amount set forth above.

"It is always difficult to fix some amount for physical injuries which will be fair to both parties. At best, it is largely guesswork. Mrs. Barr received numerous injuries, but only two of them are of any serious import: the injury to her nose and the one to her leg. She received a comminuted fracture of the femur just above the knee, the break extending into the joint. One operation was performed on it which was not successful, and then another operation in which the broken parts were wired, and from this good results have been obtained. The physician had to place traction on the leg for quite a while, then it was in a cast for several weeks; and at the time of the trial, held in April, she was still wearing a brace. It may be a year or more before she can fully use her leg, during which time it will have to be manipulated to bring it back. There will be a slight shortening of same, but we feel confident that nature will take care of this, and in time she will not have any permanent injury or any limp. She also received a broken nose, the result of which is one side of the nose is stopped up and it will require another operation or perhaps two to help this condition. The nose is likewise disfigured considerably, and it will take a plastic operation to aid this.

"She has necessarily suffered a large amount of pain and inconvenience and will have to suffer more in the future if these operations are performed, or even without them. No hard and fast rule can be used as a guide in assessing damages in a case of this kind. If Mrs. Barr had received a simple fracture of the femur, she would not have been entitled to as much as in the present case. Her recovery will be longdrawn, and in addition thereto, she has the nose condition, together with its disfigurement, and the other temporary lacerations and bruises. Doing the best we can, we fix her total damages in the sum of Eight Thousand ($8000.00) Dollars. There is therefore judgment in favor of Mr. Barr in the sum of $1002.57 and in favor of Mrs. Barr in the sum of $8000.00.

"Enos C. McClendon,
"Judge."

The lower court found that Mrs. Morton and Miss Saenger were both guilty of negligence which was the proximate cause of the accident. We are not concerned with the negligence of Mrs. Morton, if we find that Miss Saenger was guilty of negligence that was a proximate cause of the accident. This question and the plea of contributory negligence on the part of plaintiff are the only issues necessary to determine in arriving at a proper and correct conclusion in this case.

We are convinced that the lower court was correct in finding as a fact that the Morton car entered the intersection first and had almost negotiated it before the collision occurred. We are also of the opinion that the Saenger car was traveling much faster than the Morton automobile, and that the cause of the accident was the failure of Miss Saenger to keep a proper lookout. We are also convinced that neither Mrs. Morton nor Miss Saenger saw the other's car until almost the moment of the impact, and that at the time the Morton car entered the intersection, the Saenger car was some distance south of the intersection. If Miss Saenger had seen the Morton car at a time when she should have seen it—and in the eyes of the law, she did see it—she could have prevented the collision in one of several different ways, by reducing her speed, bringing her car to a stop or turning to the right or left. Her negligence, as above stated, was at least a proximate cause of the accident and plaintiff is entitled to recover unless she was guilty of contributory negligence which was a proximate cause of the accident and her injuries.

Contributory negligence is defined by Thompson on Negligence, § 165, in the following language:

"Contributory negligence, in a sound and judicial sense, is the negligence of the plaintiff, or of the person on account of whose death or injury the action is brought, amounting to want of care, and proximately contributing to bring about injury. The clear modern doctrine is that, in order to constitute such negligence as will bar a recovery of damages, these two elements must in every case concur: 1. A want of ordinary care on the part of the plaintiffs, or where the action is for damages resulting in death, a want of ordinary care on the part of the person killed; and 2. A proximate connection between this want of ordinary care and the injury complained of."

In the case of Martin v. Yazoo & M. R. Co., 181 So. 571, 582, we laid down a rule fixing the duty and care required of a guest, in order not to be guilty of contributory negligence in case of an accident and injury. It is as follows:

"We are of the opinion that it is the independent duty of a passenger or guest, when the vehicle in which he is riding is about to traverse a railroad crossing, to use ordinary, reasonable care for his own safety; that the care and precaution required of him is not as great as is that required of his host, and that the passenger or guest has the right to rely upon the driver to take the necessary precautions for his own safety and his safety until such time as the guest or passenger realizes by observation or otherwise, or should have realized by the use of ordinary care, that the driver is oblivious of the perils and dangers ahead or that he is disregarding them. This is particularly true when the guest or passenger knows that the driver is familiar with the location and the hazards surrounding it. Until such time as the actions of the driver indicate negligence, and the passenger or guest by the exercise of ordinary care has or should have discovered the perils confronting him, he is under no duty to enter a protest."

In that case, we based our decision, giving judgment to a coemployee, which we held to come under the guest rule, entirely upon the above quoted rule. After stating the rule, we said: "Adopting the above rule, we shall judge the actions of the deceased in this case. Then, after stating the facts found, we said: "When we apply the rule laid down above to these facts, we are convinced the deceased was not guilty of any contributory negligence that was a proximate cause of the accident and his death." The Supreme Court refused a writ in the case and, since we based our decision strictly upon that rule, we assume the Supreme Court gave its approval of it.

On the same day the opinion in the Martin case was handed down by us, we rendered a decision in the case of Squires v. Baldwin et al., 191 La. 249, 185 So. 14, in which the same rule was relied upon. A writ was granted in that case by the Supreme Court and, after considering it, the judgment of this court was affirmed.

We will judge the actions or want of action of plaintiff in this case by the same rule. The record does not disclose that Miss Saenger was speeding, therefore, there was no need for any protest from plaintiff on this score. It is not shown that the Saenger car was out of Miss Saenger's control. If it had been, a protest would not have brought it under control. Plaintiff contends she was keeping a lookout on her side of the car, which was to the right; that she could not see out of the left side because her view was obstructed by Miss Saenger who was taller than she; that the automobile seat was unusually low and the cowl high; that she was only five feet, three inches in height; and also on account of a spotlight attached to the front and left side of the car. There was nothing in the actions of Miss Saenger to indicate to plaintiff that she was negligent or oblivious to any peril or danger ahead and, under the rule we have laid down, she was not guilty of any negligence that would bar her recovery.

Defendant's counsel state that the award is excessive and content themselves with that statement. However, we have gone into the question fully and are convinced that the award is not excessive. In answer to the appeal, plaintiff asks that it be increased. We think it is adequate.

The judgment of the lower court is therefore affirmed, with costs.