[No. 28534.  *En Banc.*  March 26, 1942.]

JOHN BRADLEY, *Respondent,* v. S. L. SAVIDGE, INC., *Appellant.*[1]

[1]Reported in 123 P. (2d) 780.

*Eggerman & Rosling,* for appellant.

*LeCocq & Simonarson* and *Shank, Belt, Rode & Cook,* for respondent.

SIMPSON, J.—Plaintiff instituted this action to recover damages suffered as the result of a collision with an automobile owned by defendant. The case was tried to a jury and a verdict rendered in favor of plaintiff. At the close of plaintiff's case, defendant presented a motion for a nonsuit and, at the close of all the evidence, moved for a directed verdict. The motions were denied. After the verdict had been returned, defendant moved for judgment notwithstanding the verdict. The court denied the motion and entered judgment on the verdict of the jury. Defendant appeals.

Appellant urges error on the part of the trial court in denying appellant's challenge to the sufficiency of the evidence interposed at the close of the plaintiff's case, in denying appellant's motion for a directed verdict, and in denying its motion for judgment notwithstanding the verdict.

The pertinent facts are as follows: Appellant was engaged in the automobile business in the city of Seattle. During the month of November, 1939, Allen Lacy was employed by the appellant as a car salesman. On Friday preceding the Wednesday upon which the accident occurred, Lacy sold and delivered a 1939 Dodge used car to a man named Halfhill, who was employed at the Ruby dam some distance from Seattle. The sale was consummated during the evening, at which time the sales contract was signed and a payment of one hundred dollars made by check. The transaction was made in violation of the company rule that the order or contract should be approved by an executive officer of the company before delivery of the car.

The credit investigation made during the following

Monday or Tuesday disclosed that Halfhill's credit was not good, and on Tuesday the check which had been deposited in the bank was returned to appellant's office marked "N.S.F." Upon that day, Lacy was told by the manager of the used car department that he would have to secure the return of the car. Lacy then ascertained that Halfhill was working at the Ruby dam and, assuming that the car was near the dam, decided to make the trip on Wednesday morning. On that morning, Lacy asked for expense money for the journey. This request was denied, and he was told by the general manager of appellant company that he, Lacy, should take with him on the trip to repossess the car a Mr. Calvin, who was in charge of collections and handled all repossessions. At the time the instructions were given to Lacy, Calvin was not at the office, but returned about an hour after Lacy had departed. Lacy, in disobedience to the instructions given him, took with him on the trip a personal friend named Parker, who was not in the employ of or known to appellant company. Lacy did not advise any one of his intention to take Parker with him but contacted his friend some distance from appellant's place of business.

After repossessing the Halfhill car, Lacy permitted Parker to drive the one borrowed for the journey, while he drove the repossessed car. They agreed to meet at Lacy's residence in Seattle. On the way back, Parker negligently collided with respondent, causing the damages for which recovery is sought.

Appellant contends that Lacy had no authority to employ Parker to drive appellant's automobile and thus attempt to create the relation of master and servant between it and Parker. Respondent, on the other hand, maintains that Lacy did possess the authority to engage Parker, and that the presumption of agency arising from the fact of appellant's ownership was sufficient to

make a case for the jury. He maintains further that the instruction to Lacy to have Calvin accompany him on the journey was discretionary; hence, inviting Parker to drive was proper.

A minute scrutiny of the record, however, definitely establishes the fact that Lacy was ordered to take Calvin on the journey to repossess the car, and that Parker's accompaniment and driving was a distinct violation of that command. From the evidence, then, it is apparent that Lacy had neither express nor implied authority to employ Parker to undertake the journey and drive appellant's car. Respondent argues, however, that under our decisions the fact that Parker was driving appellant's car raises the presumption that he was appellant's servant; that this presumption makes a *prima facie* case which can be overcome only by testimony of disinterested witnesses; and that the evidence adduced on this question, being derived from appellant's employees, was from interested witnesses.

It is obvious that, if respondent's contention relative to the presumption of agency is sustained, the court was compelled to deny the motion for a directed verdict and the motion for judgment n. o. v., since appellant owned the car which caused the collision and since the evidence concerning the driver's authority was from interested witnesses.

In an action of this kind, plaintiff must allege and prove (1) that he sustained an injury, (2) that the driver of defendant's car was negligent, (3) that the driver's negligence was the proximate cause of his injury, (4) that the defendant owned the car, (5) that the driver was the agent or servant of the owner, and (6) that the agent or servant was acting within the scope of his authority at the time of the injury.

Respondent submitted evidence which proved that he sustained injuries, that the driver of appellant's car

was negligent, and that such negligence was the proximate cause of his injuries. In its answer, appellant admitted that it owned the car driven by Parker.

The only question for our consideration, therefore, is whether Parker was the servant of and acting for appellant at the time the collision occurred. This question will be discussed in two parts: (1) the power of an agent to employ a servant or subagent, and (2) the particular character of evidence required to overcome the presumption of agency as a matter of law. As a basis for the discussion, it is necessary to detail some of the undisputed and unimpeached evidence regarding the instructions given Lacy. When called as a witness for respondent, he testified concerning the sale of the car, a conversation he had with Mr. Hansen, the credit manager of the company, and then gave the following testimony:

"Q. And what else did he tell you in regard to what you had to do about that car? A. That I would have to see that the car was returned to the company. Q. Did he tell you when you were to go and get it? A. No. Q. You did start after it on the following Wednesday morning? A. That is right. Q. When did you determine that you were going up on Wednesday morning after this car? A. Well, when I was advised that I should go and get the automobile I decided that I would leave the following day."

On cross-examination, he testified to violating his principal's instructions by taking Parker instead of Calvin on the journey.

"Q. Did he give you any instructions as to who should go along? A. Well, he advised me that I was to take Mr. Calvin, his assistant. . . . Q. Where did Mr. Parker get into the car? A. Well, he was over across the street from the place when we left, around the corner. Q. Why was he over there? A. Well, I was violating my instructions by taking him, and I

thought it would be better if he got in the car unnoticed, and no one would know anything about it.  Q.  In what respect were you violating instructions by taking Parker?  A.  I was told to take Mr. Calvin with me. Q.  Tell us, Mr. Lacy, when you had received instruc‑ tions to take Mr. Calvin along, why did you take Mr. Parker in the place of Calvin?  A.  Well, I had already asked Parker, and he had expressed the desire to go with me, and also we were pretty good friends, and I didn't know Calvin so very well, and I thought it would be more pleasant for myself to take Mr. Parker with me than to take Calvin, and I was to wait for Cal‑ vin.  He was not there at the time.  And I was also anxious to get started and get it over with."

Mr. Hansen, the credit manager, testified:

"Q.  What is the nature of your position with S. L. Savidge, Incorporated?  A.  Credit manager.  Q.  Do you have an assistant?  A.  Yes, Mr. Calvin.  Q.  And what is his first name?  A.  Steward Calvin.  Q.  Is he sitting here in the court room?  A.  Yes, he is.  Q.  And what are the duties of Mr. Calvin?  A.  Mr. Calvin handles collections and repossessions, and also takes care of the records on open accounts.  In other words, he does the collections and repossesses automobiles. Q.  Is there anybody else in your organization who per‑ forms similar services, or who makes repossessions? A.  We have now.  We didn't, —  Q.  I mean at that time?  A.  No, we did not have at that time.  .  .  . Q.  Was there anything said with reference to taking Calvin along?  A.  And at that time when I was discussing that with Mr. Stoddard, before I left there Mr. Stoddard said no, that he would not okeh the petty cash voucher and have Calvin go along with Mr. Lacy. And then I came out and told Lacy that Mr. Stoddard would not okeh the petty cash voucher, and that he was to take Calvin along with him, but he was to raise the money to pay for the gasoline and to pay the meals of both Calvin and himself."

There was no evidence introduced to contradict that to which we have just referred.

To render appellant liable under the doctrine of

*respondeat superior* for Parker's negligence, respondent must establish that the relation of master and servant existed between them at the time of the collision. Thus, the first issue presented is whether or not Lacy, appellant's employee, possessed the authority to create that relationship by inviting Parker to drive appellant's car.

The rule is well established that an agent without express or implied authority from his principal has no power to employ another to assist in the performance of services which it is his duty to perform. Restatement, Agency (1933), 193, § 81; 39 C. J. 1272, § 1459; 35 Am. Jur. 969, § 540. In an annotation in 44 A. L. R. 1382, the rule on page 1383 is well stated:

"It may be stated generally that the master or employer is not liable for the acts of one employed by his servant or employee, without authority, express or implied, to discharge a duty intrusted to the servant or employee (18 R. C. L. 785), and it has been accordingly held that the owner of an automobile is not liable for injury or damage resulting from the negligent operation of the automobile by one who was permitted to operate the same by the one to whom it was intrusted by the owner, but who had no authority, express or implied, to permit another to drive."

"Where there is neither express nor implied authority given a servant to employ another to perform or to assist him in the performance of his work, or a subsequent ratification by his employer of such employment, the relation of master and servant between the employer and one so employed by his servant does not exist and he is not liable for the negligent acts of the latter under the doctrine of respondeat superior." 39 C. J. 1272, § 1459.

The same rule is announced in 35 Am. Jur. 969, Master and Servant, § 540.

Because the law has placed a vicarious liability on employers for the tortious conduct of their employees,

employers, in turn, possess the power to select their own servants. Consequently, the master-servant relationship cannot be imposed on an employer without his express or implied consent. In the case at bar, the evidence showed not only that Lacy lacked both express and implied authority to engage the services of Parker, but also that his invitation to Parker was in violation of appellant's express command to take Calvin.

A case very similar on its facts to this is *White v. Consumers Finance Service, Inc.,* 339 Pa. 417, 15 A. (2d) 142. Defendant finance company instructed one of its employees to repossess an automobile. Unlike the case at bar, no orders were given concerning assistance. On the way to acquire the car, the employee secured the aid of one Huddy. After repossessing it, the employee had Huddy drive the repossessed car while he drove his own. On the journey back, Huddy negligently collided with plaintiff. In refusing a recovery against the company on the theory that Huddy became its servant, the court stated:

"The liability of the original defendant for the acts of Huddy depends upon the question whether Smith, its employee, had express or implied authority to obtain Huddy's assistance in the repossession of the car. The general rule applicable to situations of this type is stated in many of our decisions. We said in *Corbin v. George,* 308 Pa. 201, speaking by the present Chief Justice, (p. 204): 'The relation of master and servant cannot be imposed upon a person without his consent, express or implied. The exception to this rule is that a servant may engage an assistant in case of an emergency, where he is unable to perform the work alone.' [Citing cases.]

"In the present case we have searched the record in vain for evidence that Smith was instructed to engage an assistant. Certainly his authority to do so cannot be implied from the nature of the service which he was directed to perform. The repossession of the car

was not such a task as 'to require, as a necessary incident, the employment of outside help.' "

See, also, *Toranto v. Hattaway*, 219 Ala. 520, 122 So. 816; *Biddle v. Haldas Bros., Inc.*, 190 Atl. (Del. Super. Ct.) 588; *Simon v. City Cab Co.*, 64 App. D. C. 364, 78 F. (2d) 506, certiorari denied 296 U. S. 640, 80 L. Ed. 455, 56 S. Ct. 173; *White v. Levi & Co.*, 137 Ga. 269, 73 S. E. 376; *Buisson v. Potts*, 180 La. 330, 156 So. 408; *Butler v. Mechanics' Iron Foundry Co.*, 259 Mass. 560, 156 N. E. 720, 54 A. L. R. 849; *Long v. Richmond*, 73 N. Y. S. 912, affirmed 67 N. E. 1084, 68 N. E. 1119; and annotations in 44 A. L. R. 1382, 54 A. L. R. 851, 98 A. L. R. 1043.

We conclude, therefore, that

"It would be a most dangerous extension of the doctrine of respondeat superior to permit one merely authorized to use another's car to turn it over to whom he may elect, and thus impose a liability on the owner for the negligence of one whom he has never known nor authorized to operate a car for him." *Toranto v. Hattaway, supra.*

We now turn to the second portion of the question under consideration: What particular sort of evidence is required to overcome the presumption of agency as a matter of law?

In many of our decisions, we have held that, where it is admitted or proved, as here, that the defendant owned the offending vehicle, the driver of which caused the injury, a presumption of agency arose in favor of plaintiff. To facilitate the orderly evidentiary progress of the trial, two facts are assumed from this presumption; namely, that the driver was the owner's agent or servant and that he was acting within the scope of his employment at the time of the collision. Furthermore, we have held that the presumption of agency can be overcome only by the testimony of disinterested

witnesses, and that the owner of the vehicle and his employees are interested witnesses.

In other holdings, on the contrary, this court has ruled that the presumption may be rebutted by competent evidence so that it disappears from the trial. Consequently, the trier of fact cannot consider the exhausted presumption, but must decide the case on the evidence introduced. If this evidence is insufficient to establish a case for the trier's determination, the court must grant a motion for a directed verdict.

Because of this inconsistency and obvious need for clarification as well as uniformity, we shall collect, reexamine, and analyze the decisions first from our own jurisdiction and then those from others with the express purpose of adopting a definite rule as to the particular sort of evidence necessary to overcome the presumption of agency as a matter of law and of overruling our holdings that are contrary thereto.

Before doing so, however, it is advisable to comment briefly on the nature of presumptions, the difference between presumptions of law and presumptions or inferences of fact, and the latter's functions in relation to the rules of evidence.

In *Beeman v. Puget Sound Traction Light & Power Co.*, 79 Wash. 137, 139 Pac. 1087, we approved the following definition of presumptions found in *Paul v. United R. Co.*, 152 Mo. App. 577, 134 S. W. 3:

" 'Presumptions' as happily stated by a scholarly counselor *ore tenus*, in another case, *'may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts.'* That presumptions have no place in the presence of actual facts disclosed to the jury, or where plaintiff should have known the facts had he exercised ordinary care, is held in many cases, of which samples are, *Reno v. Railroad,* 180 Mo. 1. c. 483; *Nixon v. Railroad,* 141 Mo. 1. c. 439; *Bragg v. Railroad,* 192 Mo. 331. To give place to pre-

sumptions on the facts of this case is but to play with shadows and reject substance." (Italics ours.)

In *Heidelbach v. Campbell,* 95 Wash. 661, 164 Pac. 247, we defined presumption as follows:

"A presumption is an *inference,* affirmative or disaffirmative, of the truth of a proposition of fact which is drawn by a process of reasoning from some one or more matters of known fact. The presumption arises from a want of knowledge of the truth of the proposition. It is in the nature of evidence, and if it be known whether the given proposition is true or false, there can be no presumption because the fact is established which the presumption tends to prove or disprove." (Italics ours.)

In *Home Insurance Co. v. Weide,* 78 U. S. 438, 441, 442, 20 L. Ed. 197, 199, this terse definition was given:

"A presumption is an *inference* as to the existence of a fact not actually known, arising from its usual connection with another which is known." (Italics ours.)

A fuller statement is found in 22 C. J. 82, § 25:

"A presumption is an *inference* of the existence or non-existence of some fact which courts or juries are required or permitted to draw from the proof of other facts; an inference which common sense, enlightened by human knowledge and experience, draws from the connection, relation, and coincidence of facts and circumstances with each other." (Italics ours.)

See, also, 1 Jones, Evidence (4th ed. 1938) 13, § 9.

The character of the presumption was elaborately amplified in *Ward v. Metropolitan Life Ins. Co.,* 66 Conn. 227, 238, 239, 33 Atl. 902, 904, 50 Am. St. 80:.

"The term 'presumption' is used to signify that which may be assumed without proof, or taken for granted. *Morford v. Peck,* 46 Conn., 380, 385. It is asserted as a self evident result of human reason and experience. In its origin, every presumption is one of fact, and not of law. It may, in course of time, become a presumption of law, and even an indisputable one.

Its truth may be so universally accepted as to elevate it to the position of a maxim of jurisprudence. Its convenience, as a rule of decision, may be so generally recognized as to place it in the rank of legal fictions. But so long as it retains its original character as a presumption of fact, it has simply the force of an argument. 1 Greenleaf's Ev., § 44; Stephen's Digest of the Law of Evidence, 246."

For a further discussion, see *Watkins v. Prudential Ins. Co.*, 315 Pa. 497, 173 Atl. 644, 95 A. L. R. 869; *O'Dea v. Amodeo*, 118 Conn. 58, 170 Atl. 486.

■ Generally, presumptions are divided into two main classes: presumptions of law and presumptions of fact. 9 Wigmore, Evidence (3rd ed., 1940) 288, § 2491; 22 C. J. 82, § 25.

"Presumptions are generally grouped into two major classes: (1) of law; and (2) of fact. The former usually have the force of legal maxims and become rules of law, with definite procedural consequences." *Watkins v. Prudential Ins. Co., supra.*

■ On the other hand, a presumption of fact is defined in 22 C. J. 83, § 26, as follows:

"A presumption of fact is that mental process by which the existence of one fact is inferred from proof of some other fact or facts with which experience shows it is usually associated by succession or coexistence."

"The difference between a presumption of fact and one of law, as these terms are commonly used, is that the former *may be*, the latter *must be*, regarded by the trier." (Italics ours.) *Ward v. Metropolitan Life Ins. Co., supra.*

Since the presumption of agency comes within the former category, it is the one with which we shall be concerned.

Finally, the purpose and basis underlying presumptions of fact were succinctly stated in Morgan, In-

structing the Jury upon Presumptions and Burden of Proof (1933), 47 Harv. L. Rev. 59, 77:

"The presumptions which operate to compel the assumption of *B* upon the establishment of *A* owe their existence to judicial demands for instruments (a) to furnish an escape from an otherwise inescapable dilemma or to work a purely procedural convenience, (b) to require the litigant to whom information as to the facts is the more easily accessible to make them known, (c) to make more likely a finding in accord with the balance of probability, or (d) to encourage a finding consonant with the judicial judgment as to sound social policy."

Speaking of the procedural rule, the supreme court of New Hampshire, in *Caswell v. Maplewood Garage*, 84 N. H. 241, 149 Atl. 746, 73 A. L. R. 433, stated:

"It does not change the burden of proof, nor free the plaintiff from the rule that he cannot invoke the judgment of the jury unless there is some substantial evidence upon which to base the essential findings in his favor. It may be that for convenience the duty of producing evidence should be put upon the defendant; but when all the evidence has been produced, it must contain something tending to prove the plaintiff's case. 'A procedural *rule* is not a thing of logic. It is one in the realm of legal requirement. It might, with equal reason, be contended that when different weights were added together the rule of arithmetic under which it was done should be regarded as contributing further weight to the total result.' 2 Chamb., Ev. s. 1224.

"The procedural duty sometimes put upon the defendant to disclose the transaction, is a very different proposition from the burden of the plaintiff to show that the transaction was of a certain kind. In his effort to sustain his burden, the plaintiff may have the benefit of the procedural rule requiring the defendant to disclose. This is not proof, but a method of getting proof. The penal feature of the administrative rule may excuse the plaintiff from producing proof if the defendant is in default under the rule. But when the defendant complies, he is no longer subject to any

penalty. The rule to produce having been complied with, it is *functus officio*. The case has no further concern with it, and the original issues are still the ones on trial. The question: is there any evidence to sustain the plaintiff's claim? still persists. 'The duty of going forward with the argument or the evidence' is 'a duty wholly separable from that of finally establishing.' Thayer, Prelim. Treatise on Ev. 386."

The function of a presumption was concisely expressed in *Sullivan v. Associated Dealers*, 4 Wn. (2d) 352, 103 P. (2d) 489:

"We have held so many times that it would seem to need no citation of authority, *that this presumption is not evidence*, and relates only to a rule of law as to which party shall first go forward and produce evidence to sustain the matter in issue; that it will serve in the place of evidence only until *prima facie* evidence has been adduced by the opposite party; *and that the presumption should never be placed in the scale of evidence.* See *Scarpelli v. Washington Water Power Co.*, 63 Wash. 18, 114 Pac. 870, and cases therein cited." (Italics ours.)

When the presumption is overcome by proper evidence, it ceases to exist and cannot be further considered by the court or jury, or used by counsel in argument.

As Cardozo, J., said in *Fiocco v. Carver*, 234 N. Y. 219, 137 N. E. 309:

"We will no longer presume anything. What the plaintiff wishes us to find for him, that he must prove."

Turning to our decisions, in *Jones v. Hoge*, 47 Wash. 663, 92 Pac. 433, 125 Am. St. 915, 14 L. R. A. (N. S.) 216, a chauffeur, without permission of the owner, drove his principal's car and caused an injury to a third party. This court decided as a matter of law that the owner was not responsible. The rule relative to the presumption was not mentioned.

In the next case, *Knust v. Bullock*, 59 Wash. 141, 109 Pac. 329, it appears that a team of horses was let to another, who, while driving it, caused an injury. In deciding it, this court laid down the rule:

"In cases of this kind, where it is shown that the wagon and team doing damage belonged to the defendants at the time of the injury, that fact establishes *prima facie* that the wagon and team were in possession of the owner, and that whoever was driving it was doing so for the owner."

No mention was made of interested or disinterested witnesses.

In *Kneff v. Sanford*, 63 Wash. 503, 115 Pac. 1040, defendant, owner of for-hire passenger cars, was sued to recover for injuries sustained when one of his drivers struck plaintiff. To rebut the presumption announced in *Knust v. Bullock, supra,* defendant and his driver both testified. In commenting on this testimony, we stated:

"This evidence, coming from appellant and Boldman [the driver], both of whom were interested witnesses, we think did not call for an instructed verdict in favor of appellant. The question presented, in its last analysis, is one of fact, and therefore cannot be determined by us in appellant's favor as a matter of law."

It was also said that the interest of the driver was a fact for the jury to consider in weighing the evidence.

In *Burger v. Taxicab Motor Co.,* 66 Wash. 676, 120 Pac. 519, the facts showed that the driver of a car belonging to defendant caused an injury. This court followed the rule of the *Knust* case and upheld judgment in favor of plaintiff. In that case, there was impeached testimony of defendant's manager to the effect that the driver of the car was violating a rule of defendant company in driving the vehicle which caused the injury.

In *Ludberg v. Barghoorn,* 73 Wash. 476, 131 Pac. 1165, the driver of defendant's car caused an injury. The evidence relative to the purpose of taking defendant's car shows that the driver was not acting for the owner at the time of the accident. That evidence was supplied by interested witnesses. In deciding the case, this court stated:

"The fact that the automobile was admitted to belong to the defendant, and that the driver of the automobile was in the employ of the defendant, was sufficient to put the defendant upon proof that the automobile was not used in his business or for his employment, has been held in a number of cases. *Knust v. Bullock,* 59 Wash. 141, 109 Pac. 329; *Kneff v. Sanford,* 63 Wash. 503, 115 Pac. 1040; *Burger v. Taxicab Motor Co.,* 66 Wash. 676, 120 Pac. 519.

"But where upon the defense it is shown conclusively and without any substantial dispute that the automobile was not being used at the time of the injury in the defendant's employment or upon his business, and was being used by some other person on business of his own and without any reference to the business of the owner, it becomes the duty of the court to direct the judgment."

In *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N. S.) 59, we held that the *prima facie* case made by proof of ownership of a car concerned in an accident could be overcome by "competent testimony."

It was shown in *Bursch v. Greenough Bros. Co.,* 79 Wash. 109, 139 Pac. 870, that, while driving defendant's car, one Meyers caused an injury to plaintiff. In speaking of the agency of Meyers, we said:

"Was Meyers, at the time of the accident, acting within the scope of his employment? Appellant insists that this issue was for the jury, and was not a question of law for the court. There would be merit in this contention if the evidence upon the point involved was conflicting, but there is no competent evidence

that Meyers was acting within the scope of his employment."

In *Maskell v. Alexander*, 91 Wash. 363, 157 Pac. 872, we held that plaintiff made a *prima facie* case when it was shown that a motorcycle which caused an accident was owned by the defendant. We quoted the excerpt from *Ludberg v. Barghoorn, supra,* which we have set out above, but did not overrule that case or distinguish it, but called attention to the fact that certain other testimony made a case for the jury's determination.

In *George v. Carstens Packing Co.*, 91 Wash. 637, 158 Pac. 529, it was shown that ·defendant was the owner of an auto delivery wagon which was instrumental in causing an accident. In deciding the case, we followed the rule announced in *Knust v. Bullock, supra.*

In *Gruber v. Cater Transfer Co.*, 96 Wash. 544, 165 Pac. 491, L. R. A. 1917F, 422, we found the facts to be that a person invited to ride in a truck by its driver, in disobedience of the rule of the owner, was injured. A verdict was returned in favor of the guest. This court reversed the judgment on the ground that the driver of the truck did not have authority to invite or permit others to ride in it. The decision in this case was founded upon that of *Fischer v. Columbia & Puget Sound R. Co.*, 52 Wash. 462, 100 Pac. 1005, in which it was held that a railroad company was not liable because the injured party

" . . . was not upon the engine by consent of the company or any of its agents who had authority to invite him to ride there."

In *Babbitt v. Seattle School Dist. No. 1*, 100 Wash. 392, 170 Pac. 1020, a fourteen year old boy was injured by a motorcycle belonging to defendant and driven by its employee. We stated the situation in the following language:

"At the conclusion of respondent's evidence, he had made a *prima facie* case, and it was then incumbent upon appellant, by *competent evidence,* to rebut the evidence and the presumption of fact raised by the admission of ownership of the motorcycle." (Italics ours.)

We then announced the rule:

"The owner of a motor vehicle who was not present at the infliction of the injury cannot be held liable, except it be shown that the person in charge was not only agent of the owner, but was, at the time, engaged in the business of his master."

The evidence produced by defendant to rebut the *prima facie* case was given by the officials and employees of the school district. The jury found for plaintiff, but we reversed the judgment and dismissed the case. In so doing, we said:

"Upon the undisputed and competent evidence as to the motorcycle being in Brown's possession at the time of the accident without authority, and of his not being at the time acting in the scope of his employment in any capacity, reasonable minds could not differ, and there was no evidence, or inference from evidence, upon which the jury was justified in holding appellant liable."

In *Moore v. Roddie,* 103 Wash. 386, 174 Pac. 648, we reversed the judgment of a trial court which had granted a motion for judgment n. o. v. in a personal injury action. The ownership of the car being admitted, the defendant, by interested witnesses, proved that the driver used it without the owner's consent. In deciding the case, we followed *Knust v. Bullock, supra,* and stated:

"The weight and credibility of the testimony of interested witnesses is also for the jury, who may disregard the same. The jury were not bound to believe the testimony in this respect. *Kneff v. Sanford,* 63

Wash. 503, 115 Pac. 1040; *Purdy v. Sherman,* 74 Wash. 309, 133 Pac. 440.

"This case is readily distinguishable from that of *Babbitt v. Seattle School Dist. No. 1,* 100 Wash. 392, 170 Pac. 1020, where there were no disputed facts for the jury to decide; in this case, as is seen, the contradicted facts are numerous. It is not our duty to trench upon the province of the jury when there are disputed contradictory facts concerning which reasonable minds might differ."

In *Singer v. Metz Co.,* 107 Wash. 562, 182 Pac. 614, 186 Pac. 327, it was admitted that the driver of the car causing the accident was employed by defendant. However, no testimony was introduced showing that the driver was about his employer's business. Plaintiff relied upon the presumption to prove. that fact. We reversed the judgment ordering a new trial, but did not mention any rule relative to interested or disinterested witnesses.

In *Samuels v. Hiawatha Holstein Dairy Co.,* 115 Wash. 343, 197 Pac. 24, a judgment for plaintiff was affirmed in a personal injury case involving an automobile truck. It was admitted that the truck causing the injury belonged to the defendant. The driver of the truck, an employee of defendant, testified that he was on a personal errand at the time of the accident. In passing upon the question presented in this case, we stated:

"One instruction complained of by appellants is that the court instructed the jury that whenever such presumption (of operation by the owner) exists by reason of such ownership, the burden is then cast upon the defendants *to overcome such presumption by competent evidence,* and that it was the duty of the jury to determine the question whether the driver was engaged in the business of the defendant from all the evidence and circumstances shown by the evidence. This instruction stated the law as laid down in *Birch v. Abercrombie, supra* [74 Wash. 486, 133 Pac. 1020, 135 Pac.

821, 50 L. R. A. (N. S.) 59], and several later cases." (Italics ours.)

In the case of *Savage v. Donovan,* 118 Wash. 692, 204 Pac. 805, the jury found for plaintiff and the trial court refused to grant a judgment notwithstanding the verdict. This court reversed the action of the trial court, although the only testimony rebutting the presumption of agency was given by the driver and one of the defendants. In deciding the case, we stated:

"We have held that, when it is shown the vehicle doing the damage belonged to the defendants at the time of the injury, that fact establishes *prima facie* that the vehicle was then in the possession of the owner, and that whoever was driving it was doing so for the owner. *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 135 Pac. 821, 50 L. R. A. (N. S.) 59; *Ludberg v. Barghoorn,* 73 Wash. 476, 131 Pac. 1165. *The presumption, however, is a rebuttable one and exists only so long as there is no substantial evidence to the contrary.* Birch v. Abercrombie, and Ludberg v. Barghoorn, supra; Babbitt v. Seattle School Dist. No. 1, 100 Wash. 392, 170 Pac. 1020." (Italics ours.)

*Mitchell v. Churches,* 119 Wash. 547, 206 Pac. 6, 36 A. L. R. 1132, was an automobile case. Defendant's car was driven by an employee. The evidence presented on behalf of defendant was from interested witnesses. In deciding the case, it was said:

"We have consistently held through a long line of decisions that the relation of owner and agency at the time of the act complained of must be established, or at least must present such a question of fact as to the truth of the agency on the part of the one causing the injury as to leave it a question for the jury. . . . And we have consistently held, as in *Purdy v. Sherman,* supra [74 Wash. 309, 133 Pac. 440], and *Moore v. Roddie,* 103 Wash. 386, 174 Pac. 648, that, where nothing but the testimony of interested witnesses as to the ownership of the car and the agency of the driver at the time of the injury was presented to the jury, the

jury was not bound to believe such testimony, where the ownership of the automobile was admitted or was conclusively shown to be in the defendant."

In passing, we call to mind the rule that the jury does not have to believe the testimony of either interested or disinterested witnesses. Certainly, both may testify. Rem. Rev. Stat., § 1211 [P. C. § 7722]. It is the duty of the jury to determine the credibility of each witness and the weight to be given his testimony.

In *Vernarelli v. Sweikert*, 123 Wash. 694, 213 Pac. 482, an automobile collision case, defendant admitted the ownership of the offending car. To dissipate the presumption of agency, defendant and the driver both testified regarding the latter's scope of employment. In holding for plaintiff, we declared:

"This is a question for the jury to pass upon, and since the defendant and his agent are interested witnesses, the jury was not bound to believe their testimony unless it was corroborated by other facts and circumstances in the case or other competent testimony."

*Anning v. Rothschild & Co.*, 130 Wash. 232, 226 Pac. 1013, was another automobile collision case. Defendant admitted the ownership of the car, the driver of which caused the accident. We held that the presumption of agency was overcome by "positive testimony of disinterested witnesses."

In *Griffin v. Smith*, 132 Wash. 624, 232 Pac. 929, the court said:

"When the ownership of the automobile was proven or admitted a *prima facie* case had been made, unless overcome by testimony to the contrary, upon which plaintiff was entitled to recover."

In *Feldtman v. Russak*, 141 Wash. 287, 251 Pac. 572, it was held by this court that a case must be submitted to a jury where there was no corroboration of interested witnesses.

In *Kludas v. Inland-American Printing Co.*, 149 Wash. 180, 270 Pac. 429, plaintiff brought action to recover for personal injuries, received when struck by a car rented to defendant and driven by its employee. To dissolve the presumption of agency, defendant's officer and employee testified that the latter was on a personal errand at the time of the injury. In passing on the presumption question, we stated:

"An officer or employee of the company, who was Shanks' [the driver] immediate superior, testified that Shanks had requested permission to go to the store for shopping that morning and he had given such permission. Both Shanks and the other witness were interested in the result of the controversy. Even though they both testified directly that Shanks was not at the time in the course of his employment, this would not be sufficient to justify the taking of the case from the jury, when it appeared that Shanks was an employee, was paid full time for the day and the automobile, while not owned by the company, was in its service by contract."

We followed the same rule in *Barach v. Island Empire Tel. & Tel. Co.*, 151 Wash. 279, 275 Pac. 713.

In *Mitchell v. Nalley's, Inc.*, 163 Wash. 183, 300 Pac. 526, we said:

"While we have held that such ownership and employment, being proven or admitted, create a presumption of liability by the owner and employer for such negligence, we have also held that such presumption becomes of no force and is not within itself evidence, when rebutted by credible evidence in addition to the testimony of interested witnesses."

In that case, we upheld the judgment of the court in granting a motion for judgment n. o. v. Because there was some evidence of disinterested witnesses, the presumption of agency arising from ownership of defendant's car was overcome.

The facts shown in *Steiner v. Royal Blue Cab Co.,* 172 Wash. 396, 20 P. (2d) 39, disclose that one taxicab ran into another, causing injury to the driver of the one run into. In speaking of the presumption arising from the ownership of the car causing the injury, we declared:

"The rule to which our attention is directed is that, when it is proved or admitted that the vehicle doing the damage belonged to the defendant at the time of the injury, a *prima facie* case is made that the vehicle was then in the possession of the owner, and that the person driving it was an employee of the owner and was operating the vehicle in furtherance of the owner's business. True, the *prima facie* case rests upon a presumption which exists only so long as there is no substantial evidence to the contrary. It should be borne in mind, however, that the burden is imposed upon the defendant to overcome that presumption; and that we are committed to the rule that the question whether the offending vehicle was in the service of the defendant at the time of the accident is for the jury when the testimony against the presumption is that of interested winesses."

An instruction that the presumption could be overcome by a "fair preponderance of all the evidence" also was approved.

In *McMullen v. Warren Motor Co.,* 174 Wash. 454, 25 P. (2d) 99, this court announced the rule in the following language:

"When the respondent showed that the appellant was the owner of the automobile, they made a *prima facie* case to the effect that, at the time of the accident, the vehicle was in the possession of the owner, and that whoever was driving it was doing so for such owner. *Knust v. Bullock,* 59 Wash. 141, 109 Pac. 329; *Savage v. Donovan,* 118 Wash. 692, 204 Pac. 805; *Steiner v. Royal Blue Cab Co.,* 172 Wash. 396, 20 P. (2d) 39. The *prima facie* case so made means only that the case had proceeded upon sufficient proof to that stage where it must be submitted to the jury, unless the *prima facie*

case should be met by the testimony of disinterested witnesses. *Singer v. Metz Co.,* 107 Wash. 562, 182 Pac. 614, 186 Pac. 327.

"The *prima facie* case against the owner of a vehicle which causes damages while in the possession of another, rests upon a presumption which is not evidence, but relates to a rule of law and is a conclusion. The presumption serves as, and in the place of, evidence until the *prima facie* case is met by the opposite party with disinterested testimony. When the *prima facie* case is so met, the presumption has spent its force, and the party in whose favor it operated must meet his opponent's evidence with evidence. *Scarpelli v. Washington Water Power Co.,* 63 Wash. 18, 114 Pac. 870; *Anning v. Rothschild & Co.,* 130 Wash. 232, 226 Pac. 1013. The *prima facie* case, however, based upon the presumption, is not met by the testimony of interested witnesses, and, as against such witnesses, the presumption will take the case to the jury."

We have followed this rule in *Templin v. Doan,* 187 Wash. 68, 59 P. (2d) 1110.

On the other hand, in *Murray v. Kauffman Buick Co.,* 197 Wash. 469, 85 P. (2d) 1061, after stating the rule relative to the creation of the presumption of agency, we said:

"This presumption is, of course, rebuttable, and we have held that *evidence introduced by the owner of a car may, as matter of law, overcome the presumption.*" (Italics ours.)

And in *Van Court v. Lodge Cab Co.,* 198 Wash. 530, 89 P. (2d) 206, we held that the presumption could be overcome by "competent evidence."

Finally, in *Sullivan v. Associated Dealers, supra,* action was brought to recover for personal injuries sustained in an automobile collision. As the ownership of the offending car and the employment of the driver were both admitted by defendant, the point of contention concerned the existence of agency at the time of

the collision. In speaking of the presumption, we declared:

"While it is true we have held that the presumption is not overcome by the testimony of interested witnesses alone, we have never held that the court could not consider the undisputed and unimpeached testimony of interested witnesses, together with the testimony of disinterested witnesses and the physical facts, in passing upon a motion for a directed verdict."

From this survey of our decisions, it will be perceived that, on the one hand, the *Ludberg, Birch, Bursch, Babbitt, Savage, Samuels, Murray,* and *Van Court* cases hold that the presumption may be overcome by competent testimony regardless of whether it is derived from interested or disinterested witnesses, while, on the other hand, the *Moore, Mitchell (Mitchell v. Churches), Vernarelli, Anning, Griffin, Feldtman, Kludas, Barach, Mitchell (Mitchell v. Nalley's, Inc.), Stam, Steiner, McMullen, Templin,* and *Sullivan* cases hold that the presumption may be overcome only by the testimony of disinterested witnesses. See a note (Presumptions Arising from Ownership of a Vehicle) in 8 Wash. L. Rev. 137.

Following is a collection of cases, from the courts of other jurisdictions, which have a definite bearing upon the question now under discussion. These decisions announce and adhere to the rule that the presumption or inference of fact in cases of this nature is overcome by evidence which is uncontradicted, clear, convincing, and unimpeached, regardless of whether it comes from interested or disinterested witnesses.

*Federal Courts: Del Vecchio v. Bowers,* 296 U. S. 280, 80 L. Ed. 229, 56 S. Ct. 190; *New York Life Ins. Co. v. Gamer,* 303 U. S. 161, 82 L. Ed. 726, 58 S. Ct. 500, 114 A. L. R. 1218; *Department of Water & Power*

*v. Anderson,* (C. C. A. 9th) 95 F. (2d) 577, certiorari denied 305 U. S. 607, 83 L. Ed. 386, 59 S. Ct. 67.

*Alabama: Tullis v. Blue,* 216 Ala. 577, 114 So. 185; *Cruse-Crawford Mfg. Co. v. Rucker,* 220 Ala. 101, 123 So. 897; *Chandler v. Owens,* 235 Ala. 356, 179 So. 256 (defendant's rebutting evidence not convincing, question for jury); *Craft v. Koonce,* 237 Ala. 552, 187 So. 730.

*Arizona: Blue Bar Taxicab Etc. Co. v. Hudspeth,* 25 Ariz. 287, 216 Pac. 246; *Lutfy v. Lockhard,* 37 Ariz. 488, 295 Pac. 975; *Peters v. Pima Mercantile Co.,* 42 Ariz. 454, 27 P. (2d) 143.

*California: Martinelli v. Bond,* 42 Cal. App. 209, 183 Pac. 461; *Market Street R. Co. v. George,* 116 Cal. App. 572, 3 P. (2d) 41; *Crouch v. Gilmore Oil Co.,* 5 Cal. (2d) 330, 54 P. (2d) 709; *Montanya v. Brown,* 31 Cal. App. (2d) 642, 88 P. (2d) 745. (The word "inference" (of fact) is used in place of "presumption" (of fact).)

*Colorado: American Ins. Co. v. Naylor,* 101 Colo. 34, 70 P. (2d) 349.

*District of Columbia: Curry v. Stevenson,* 58 App. D. C. 162, 26 F. (2d) 534; *Walsh v. Rosenberg,* 65 App. D. C. 157, 81 F. (2d) 559, certiorari denied, 298 U. S. 663, 80 L. Ed. 1388, 56 S. Ct. 747 (upholds the rule, but defendant's rebutting evidence was discredited); *Rosenberg v. Murray,* 73 App. D. C. 67, 116 F. (2d) 552.

*Georgia: Fielder v. Davison,* 139 Ga. 509, 77 S. E. 618. (Upholds the rule, but defendant's evidence was conflicting.)

*Idaho: Magee v. Hargrove Motor Co.,* 50 Idaho 442, 296 Pac. 774; *Willi v. Schaefer Hitchcock Co.,* 53 Idaho 367, 25 P. (2d) 167; *Manion v. Waybright,* 59 Idaho 643, 86 P. (2d) 181.

*Iowa: Rowland v. Spalti,* 196 Iowa 208, 194 N. W. 90; *Robinson v. Shell Petroleum Corp.,* 217 Iowa 1252, 251 N. W. 613.

*Louisiana:* Norman v. Little, 14 La. App. 298, 129 So. 459 (upholds the rule, but defendant's rebutting evidence was weak); *Middleton v. Humble,* 172 So. (La. App.) 542; *Kendricks v. Lewis,* 175 So. (La. App.) 484.

*Maryland:* State v. C. J. Benson & Co., 129 Md. 693, 100 Atl. 505; *Dearholt Motor Sales Co. v. Merritt,* 133 Md. 323, 105 Atl. 316; *Pollock v. Watts,* 142 Md. 403, 121 Atl. 238; *Wagner v. Page,* 20 A. (2d) (Md.) 164.

*Michigan:* Wehling v. Linder, 248 Mich. 241, 226 N. W. 880; *Morrow v. Trathen,* 288 Mich. 172, 284 N. W. 687.

*Minnesota:* Ewer v. Coppe, 199 Minn. 78, 271 N. W. 101.

*Missouri:* State ex rel. Steinbruegge v. Hostetter, 342 Mo. 341, 115 S. W. (2d) 802; *Waters v. Hays,* 130 S. W. (2d) (Mo. App.) 220. (Upholds the rule, but defendant's rebutting evidence was not convincing.)

*Mississippi:* Bourgeois v. Mississippi School Supply Co., 170 Miss. 310, 155 So. 209.

*Nebraska:* Ebers v. Whitmore, 122 Neb. 653, 241 N. W. 126.

*New Hampshire:* Caswell v. Maplewood Garage, 84 N. H. 241, 149 Atl. 746, 73 A. L. R. 433.

*New Jersey:* Okin v. Essex Sales Co., 103 N. J. L. 217, 135 Atl. 821; *Patterson v. Surpless,* 107 N. J. L. 305, 151 Atl. 754, 74 A. L. R. 841; *Dooley v. Saunders U-Drive Co.,* 109 N. J. L. 295, 162 Atl. 556.

*New York:* Potts v. Pardee, 220 N. Y. 431, 116 N. E. 78, 8 A. L. R. 785; *Rose v. Balfe,* 223 N. Y. 481, 119 N. E. 842, Ann. Cas. 1918D, 238. (Note (1933) 8 St. John's L. Rev. 126, 128, 129.)

*North Carolina:* Jeffrey v. Osage Mfg. Co., 197 N. C. 724, 150 S. E. 503. (Upholds the rule, but conflicting evidence made a jury question.)

*Ohio:  White Oak Coal Co. v. Rivoux,* 88 Ohio St. 18, 102 N. E. 302.

*Oregon:  Judson v. Bee Hive Auto Service Co.,* 136 Ore. 1, 294 Pac. 588, 297 Pac. 1050, 74 A. L. R. 944. (The word "inference" (of fact) is used in place of "presumption" (of fact).)

*Oklahoma: Gallagher v. Holcomb,* 172 Okla. 1, 44 P. (2d) 44.

*Pennsylvania:  Holzheimer v. Lit Brothers,* 262 Pa. 150, 105 Atl. 73 (upholds the rule, but defendant's rebutting evidence was contradictory); *Hartig v. American Ice Co.,* 290 Pa. 21, 137 Atl. 867 (upholds the rule, but defendant's rebutting evidence was not "clear, positive, credible and uncontradicted.")

*Rhode Island:  McIver v. Schwartz,* 50 R. I. 68, 145 Atl. 101.

*South Carolina:  Craig v. Clearwater Mfg. Co.,* 189 S. C. 176, 200 S. E. 765.

*Tennessee:  Long v. Tomlin,* 22 Tenn. App. 607, 125 S. W. (2d) 171 (certiorari denied); *Southern Motors v. Morton,* 154 S. W. (2d) (Tenn. App.) 801 (certiorari denied).

*Utah:  Saltas v. Affleck,* 99 Utah 65, 102 P. (2d) 493.

*Virginia:  Sydnor & Hundley v. Bonifant,* 158 Va. 703, 164 S. E. 403.

*West Virginia:  Jenkins v. Spitler,* 120 W. Va. 514, 199 S. E. 368; *Hollen v. Reynolds,* 15 S. E. (2d) (W. Va.) 163.

*Wisconsin:  Zurn v. Whatley,* 213 Wis. 365, 251 N. W. 435; *Philip v. Schlager,* 214 Wis. 370, 253 N. W. 394; *Burant v. Studzinski,* 234 Wis. 385, 291 N. W. 390; *Hanson v. Engebretson,* 237 Wis. 126, 294 N. W. 817; (note (1941) 4 Wis. L. Rev. 521).

Annotations will be found in 42 A. L. R. 898; 72 A. L. R. 94, 98; and 74 A. L. R. 951. See, also, 4 Berry, Automobiles (7th ed. 1935), 845-851, § 4.491; 15-16

Huddy, Automobile Law (9th ed. 1931), 310-312, § 161.

In *Del Vecchio v. Bowers, supra,* the supreme court of the United States, in speaking of the presumption mentioned in § 20 (d), of the longshoremen's and harbor workers' compensation act, 33 U. S. C. A. § 920 (d), said:

"Considerations of fairness and experience in human affairs induce fact-finding bodies, where there is a balance of probability, to adopt a working assumption as the basis of a conclusion, unless and until the facts are developed by evidence. The natural love of life, the comparative infrequency of suicide as contrasted with accident, and the likelihood that testimony as to the cause of death would be more readily available to the employer than to the claimant, justify a presumption, which the law indulges in such a case, that the death was accidental. The act under consideration, however, does not leave the matter to be determined by the general principles of law, but announces its own rule, to the effect that the claimant, in the absence of substantial evidence to the contrary, shall have the benefit of the presumption of accidental death. The employer must rebut this *prima facies.* The statement in the act that the evidence to overcome the effect of the presumption must be substantial adds nothing to the well understood principle that a finding must be supported by evidence. Once the employer has carried his burden by offering testimony sufficient to justify a finding of suicide, the presumption falls out of the case. It never had and cannot acquire the attribute of evidence in the claimant's favor. Its only office is to control the result where there is an entire lack of competent evidence. If the employer alone adduces evidence which tends to support the theory of suicide, the case must be decided upon that evidence. Where the claimant offers substantial evidence in opposition, as was the case here, the issue must be resolved upon the whole body of proof pro and con."

"The presumption is not evidence and may not be given weight as evidence." *New York Life Ins. Co. v. Gamer, supra.*

In *Tullis v. Blue*, 216 Ala. 577, 114 So. 185, plaintiff instituted action for personal injuries caused from a collision with an automobile owned by defendant and driven by another. To destroy the presumption of agency arising from defendant's ownership of the automobile, defendant offered testimony which denied the existence of the agency relation. In answering plaintiff's argument that the presumption carried the issue to the jury notwithstanding evidence to the contrary, the court declared:

"They [presumptions] are not in themselves evidence, and in practice their effect is merely to impose upon the defendant the burden of showing that the driver was not his agent, or that, if he was, he was not acting within the scope of his authority or in the course of his employment. If the evidence thereon is in conflict, or leads to doubtful inference only, the issue should go to the jury. *If, however, the evidence, without dispute, rebuts the facts thus presumed, there is no issue for the jury, and the general affirmative charge should be given for the defendant on request.* [Citing cases]

"In this case the testimony of Tullis [the defendant] is clear, undisputed, and conclusive to the effect that Haltiwanger [the driver] was not working for him, and was not out on his business on the night of the accident, and that he did not know Haltiwanger was going to drive the car on that occasion. This conclusively rebuts the presumptions relied on." (Italics ours.)

Likewise, in *Peters v. Pima Mercantile Co., Inc.*, 42 Ariz. 454, 27 P. (2d) 143, action was brought for injuries sustained in a collision with a truck owned by defendant company and driven by an employee, defendant McNeil. At the close of the plaintiff's case, which created the presumption of agency, defendant company's president and the defendant employee offered evidence which showed that at the time of the collision the latter was not acting within the scope of

his employment. Thereafter, the company's motion for a directed verdict was granted and plaintiff appealed.

In determining the propriety of the ruling, the court held:

"While it is true that when it appeared from the testimony in behalf of appellant that the truck was owned by appellee and that Sidney [defendant McNeil] was employed by it to do anything around the store, including the driving of the truck, there arose the presumption that he was acting within the scope of his employment, *Guthrie v. Holmes*, 272 Mo. 215, 198 S. W. 854, Ann. Cas. 1918D 1123, *this was only prima facie so and the force thereof was completely overcome when the testimony of J. J. McNeil [defendant company's president] and his son [defendant McNeil] disclosed that the latter was not following his instructions to go to the city and get the merchandise when he made the side trip of about two miles to the hospital to see about the dog.*" (Italics ours.)

To overcome the presumption of agency, defendant, in *Curry v. Stevenson,* 58 App. D. C. 162, 26 F. (2d) 534, gave testimony negating agency. At the close of the evidence, defendant moved for a directed verdict, which was denied. In reversing the trial court, it was stated:

"*Where the prima facie inference arising from the fact of ownership is overcome by uncontradicted proof that in fact an automobile was not in the possession of the owner or his servant or agent, the question is one for the court, and not the jury.* [Citing cases]
. . .

"Defendant's testimony was uncontradicted, reasonable, and consistent. . . .

"As the case stood, therefore, when the motion for directed verdict was interposed, the uncontradicted evidence was to the effect that on the night in question Tryman was in possession of the car and driving it on a mission of his own. In such a situation, the defendant was not liable. [Citing cases]

"There was, therefore, no issue to be submitted to the jury, and a verdict should have been directed for the defendant." (Italics ours.)

Moreover, in deciding whether certain evidence dissipated the presumption of agency, the same court, in *Rosenberg v. Murray,* 73 App. D. C. 67, 116 F. (2d) 552, expressed its conclusion as follows:

"In the case under consideration appellant testified positively and unequivocally that Dyson had taken the car without his knowledge, authority, or consent, and his uncontradicted statement to this effect, of course, overcame the statutory presumption, just as similar testimony overcomes, as we have often held, the common-law presumption that an agent is on his master's business when he drives his master's car. *Curry v. Stevenson,* 58 App. D. C. 162, 26 F. 2d 534; *Peabody v. Marlboro Implement Co.,* 63 App. D. C. 288, 72 F. 2d 81; *Simon v. City Cab Co.,* 64 App. D. C. 364, 78 F. 2d 506. *In each of these cases the positive testimony which overcame the presumption was that of the owner.*" (Italics ours.)

Again, in *Morrow v. Trathen,* 288 Mich. 172, 284 N. W. 687, plaintiff instituted action for injuries sustained from a collision with a truck owned by defendant and driven by an employee. To exhaust the presumption of agency, " . . . McGee testified that he had no permission to drive the truck upon the occasion abovementioned, nor did defendant Trathen have any knowledge that the truck was being so used." A directed verdict was then ordered for defendant.

In passing on this ruling, the court held:

"Decision in this cause is controlled by *Sheathelm v. Consumers Power Co.,* 280 Mich. 106, where we quoted with approval the statement made in *Wehling v. Linder,* 248 Mich. 236:

" 'One who is driving a motor vehicle incident to the owner's business is presumed to be duly authorized to so drive the vehicle; but it is the established law in this State that such a presumption prevails in

favor of the litigant relying thereon only so long as that phase of the case is not covered by testimony to the contrary. . . . *If the testimony opposed to the presumption is clear, positive and uncontradicted, it becomes the duty of the trial judge to direct a verdict if the issue is a controlling one in the case.' "* (Italics ours.)

Presented with a factual situation similar to the instant case, the court in *Ewer v. Coppe,* 199 Minn. 78, 271 N. W. 101, likewise, was confronted with the question of whether or not the undisputed and uncontradicted testimony of interested witnesses would dissolve the presumption of agency.

In very explicit language the court said:

"In our opinion the inference or presumption raised by Dineen's [the driver's] possession of the car was conclusively rebutted. Without it there is no evidence in the case to justify a verdict against the owners. The evidence that without special permission he was allowed to use the car only for his employer's business was entirely credible, uncontradicted, and unimpeached. *It cannot be disregarded, although given by interested witnesses."* (Italics ours.)

Further, in *Zurn v. Whatley,* 213 Wis. 365, 251 N. W. 435, an appeal by defendant, plaintiff maintained that the jury did not have to believe defendant's testimony negating agency, and that the presumption of agency justified the jury's finding.

In reversing plaintiff's judgment, the court stated:

*"But the presumption [of agency] is one of fact, not of law, and must yield to undisputed credible evidence to the contrary. Here the direct testimony of the father [the defendant] rebuts the presumption.* There is no evidence to the contrary and nothing in the circumstances to discredit the father's direct and positive testimony. The record discloses no reason for saying or suggesting that the father's testimony is not credible. So the proved fact is that the son was not

the father's agent and neither court nor jury might rightly find that he was." (Italics ours.)

Finally, in discussing the effect on the presumption of a clear, undisputed, and uncontradicted denial of agency, the same court, in *Philip v. Schlager,* 214 Wis. 370, 253 N. W. 394, declared:

"It [the presumption of agency] is a legal rule governing the order and burden of proceeding with the evidence requiring the tribunal to come to a certain conclusion in the absence of proof rebutting the presumption. This being true, the presumption exhausts its purpose and disappears when it is met by opposing evidence which the jury have a right to believe. Then the duty rests upon the one relying upon the presumption to go forward with his evidence and meet the requirements of the burden of proof. The appellant here denied that Haubrich was employed by him. *Applied to the facts of the present case, this presumption could not survive Schlager's explicit denial of agency.* Upon this denial, this issue of agency was unaided and unembarrassed by any presumption." (Italics ours.)

There is, however, authority to the contrary. For example: *Ball v. Hail,* 196 Ark. 491, 118 S. W. (2d) 668; *Rawlings v. Clay Motor Co.,* 287 Ky. 604, 154 S. W. (2d) 711. But compare *Mullen & Haynes Co. v. Crisp,* 207 Ky. 31, 268 S. W. 576; *Monaghan v. Standard Motor Co.,* 96 Mont. 165, 29 P. (2d) 378; *Merryman v. Zeleny,* 143 S. W. (2d) (Tex Civ. App.) 410.

After a careful study of our cases and those from other jurisdictions to which we have called attention, we conclude that there is no good reason for adhering to the rule that the presumption in cases of this nature may only be overcome by disinterested testimony, but every good reason is demonstrated in the authorities cited that cases of this character should

be subject to the same rules governing other presumptions or inferences of fact.

Litigants are entitled to have their cases decided upon the evidence presented in accordance with general rules. A litigant should not be penalized because the truth comes from himself or from his employees. Every witness is presumed to tell the truth, and his evidence should be accorded that presumption.

In conformity with almost unanimous authority, including all of our own cases without exception, we adhere to the rule that, when it is shown that a person owns an automobile concerned in an accident, it is pre-. sumed as an inference of fact that the driver was the agent of the owner and was acting within the scope of his authority. In further conformity with the great weight of authority, likewise including many of our own decisions, we also hold that the presumption thus accorded does not have the force of evidence, but merely gives rise to a procedural rule, that is to say, the presumption itself does not shift the ultimate burden of proof from the plaintiff to the defendant, but simply casts upon the defendant the burden of going forward with evidence to meet the presumption, and in this process carries the case beyond the granting of a nonsuit at that point.

Departing, however, from the rule as heretofore declared in a number of our own cases to the effect that such presumption may be overcome only by *disinterested* testimony, and following what we conceive to be the correct rule as declared by the great weight of authority, including many decisions of this court, we now hold that the presumption may be overcome by competent evidence from either *interested or disinterested* witnesses, provided that their testimony is uncontradicted, unimpeached, clear, and convincing. When evidence of that degree and character is sub-

mitted by the defendant, the presumption disappears entirely from the case, casting upon the plaintiff the burden of producing *competent evidence* to meet the evidence of the defendant, and of establishing by a preponderance of the evidence the fact that, at the time of the accident, the driver of the offending automobile was the agent of the owner and was acting within the scope of his authority. If the plaintiff fails in that respect, the court is required, upon motion of the defendant, to direct a verdict in the latter's favor. The pronouncement of this rule requires and results in the overruling of those cases, hereinbefore cited, which have proceeded on a contrary view.

The rule as now declared by us requires a further exemplification for the guidance of the trial courts. Whether the evidence submitted by the defendant upon the issue in question meets the requirement calling for uncontradicted, unimpeached, clear, and convincing testimony, is initially a question of law for the trial court. If the court should determine that the testimony is of that degree and character, and if that testimony is not met by countervailing evidence on the part of the plaintiff, the case must be dismissed upon motion for a directed verdict. If, on the other hand, the trial court should be of the opinion that, whatever may be the value of defendant's evidence, it has not attained the degree and character required for the purpose of a directed verdict, the case should be submitted to the jury to be decided by it on all the evidence then before the court.

In the instant case, respondent has not pointed out, nor can we find, any fact or circumstance which would furnish the slightest justification for rejecting the clear, convincing, unimpeached, and undisputed testimony given in support of appellant's case by its employees.

There is not a shred of evidence to warrant the inference that Parker was in any way a servant, agent, or representative of appellant company. All of the evidence proves positively to the contrary.

Therefore, inasmuch as the state of the evidence is such that the verdict against appellant cannot be allowed to stand, the judgment based thereon must be reversed.

ROBINSON, C. J., STEINERT, BEALS, and JEFFERS, JJ., concur.

BLAKE, J. (dissenting)—The majority say: "Every witness is presumed to tell the truth and his evidence should be accorded that presumption." Yet, in every jury trial, the court, as a matter of course, tells the jurors:

"You are the sole and exclusive judges of the evidence and the credibility of the witnesses and of the weight to be attached to their testimony. In weighing the testimony of a witness, you should take into consideration his demeanor on the witness stand, his apparent fairness or lack of fairness, his apparent candor or lack of candor, the reasonableness or unreasonableness of his story *and his interest, if any, he may have in the result of the trial.*"

Are jurors now to be instructed that it is presumed that the witnesses have told the truth, and that their evidence is to be accorded that presumption regardless of any interest they may have in the result of the trial? Of course not. For the stock instruction on credibility of witnesses is simply a recognition of an age old frailty of human nature: that man is prone to color and embellish any story he tells to suit his own best interest whether he is under oath or not. Indeed, at common law, the frailty was deemed so inherent in human nature that parties having an interest in the

result of the trial were not permitted to testify—thus obviating any temptation to commit perjury or fabricate evidence.

"At common law the most important, because most extensive ground of incapacity was that supposed inclination to falsify which arose from the prospect of gaining or losing by the issue of the proceedings. The circumstance creating this incapacity was known as Interest; and the theory was that 'from the nature of human passions and actions there is more reason to distrust such a biased testimony than to believe it.'" 1 Greenleaf on Evidence (16th ed.), p. 487, § 328b.

The rule that the presumptions flowing from proof of ownership of a vehicle may be overcome only by testimony of disinterested witnesses, has its origin in that very frailty of human nature. The rule was a safeguard against perjury and the fabrication of evidence. To my mind, its abandonment will tend to defeat rather than promote the ends of justice.

The majority further say: " . . . we now hold that the presumption may be overcome by competent evidence from either *interested or disinterested* witnesses, provided that their testimony is uncontradicted, unimpeached, clear, and convincing." Applying this doctrine in the instant case, *this* court has assumed the functions of the jury. It has assumed to pass upon the weight of the evidence and the credibility of witnesses whom the jury (after hearing them testify and seeing them on the witness stand) declined to believe. In *Birch v. Abercrombie,* 74 Wash. 486, 489, 133 Pac. 1020, 50 L. R. A. (N. S.) 59, Judge Ellis, speaking for the court, said:

"It is well established that, in cases of this kind, where the vehicle doing the damage belonged to the defendants at the time of the injury, that fact establishes *prima facie* that the vehicle was then in the possession of the owner, and that whoever was driving it was doing so for the owner. We have repeatedly

so held. *Knust v. Bullock,* 59 Wash. 141, 109 Pac. 329; *Kneff v. Sanford,* 63 Wash. 503, 115 Pac. 1040; *Burger v. Taxicab Motor Co.,* 66 Wash. 676, 120 Pac. 519. *The burden was thus cast upon the appellants to overcome this presumption by competent evidence and it was for the jury to say upon such evidence whether the burden had been sustained."* (Italics mine.)

The court's assumption of the function of weighing the evidence and appraising the credibility of witnesses is subversive of the right of trial by jury.

I dissent.

MAIN, MILLARD, and DRIVER, JJ., concur with BLAKE, J.